Squire Patton Boggs (US) LLP
Adam R. Fox (State Bar # 220584)
adam.fox@squirepb.com
Helen Yang (State Bar # 241170)
helen.yang@squirepb.com
Erin M. Gilmore (State Bar # 324319)
erin.gilmore@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:     +1 213 624 2500
Facsimile:     +1 213 623 4581

Attorneys for Defendant
MARTIAN SALES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.M. and M.C, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MARTIAN SALES, INC.,<br><br>                    Defendant. | Case No. 3:23-cv-06202<br><br>**MARTIAN SALES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. RULE OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**<br><br>**Judge**: Judge Araceli Martínez-Olguín<br>**Ctrm**: 10, 19th Floor<br>**Hearing Date**: June 27, 2024<br>**Hearing Time**: 2:00 p.m. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ....................................................................................................... 1

II.     DEFENDANT MARTIAN SALES IS NOT SUBJECT TO THE COURT'S
        JURISDICTION, AND THIS CASE SHOULD BE DISMISSED UNDER RULE
        12(B)(2). ...................................................................................................................... 1

        A.      Martian Sales Is Not Subject to General Jurisdiction in California. ...................... 1

        B.      Martian Sales Is Not Subject to Specific Jurisdiction in California. ...................... 2

                1.      Actions of Separate Entities and Individuals Cannot Be Imputed to
                        Martian Sales to Establish Personal Jurisdiction. ...................................... 3

                2.      Plaintiffs Have Not Met Any of the Specific Personal Jurisdiction Factors.
                        ............................................................................................................... 5

        C.      Plaintiffs Are Not Entitled to Jurisdictional Discovery. ........................................ 8

III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6). .............. 8

        A.      The Delayed Discovery Rule Is Inapplicable. ...................................................... 8

        B.      Plaintiffs Do Not Plead Their Claims With the Requisite Specificity. ................ 10

        C.      Plaintiffs Breach of Implied Warranty Claim Fails ............................................ 12

        D.      Plaintiffs' Equitable Claims Must Be Dismissed. .............................................. 14

IV.     CONCLUSION ........................................................................................................ 14

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*In re Actimmune Marketing Litigation*,
    No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal., Sept. 1, 2010), *aff'd*,
    464 F. App'x. 651 (9th Cir. 2011) ................................................................. 10

*Adams v. Cole Haan, LLC*,
    No. Sacv-20-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)........................... 14

*In re Arris Cable Modem Consumer Litig.*,
    No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ................... 11

*Autodesk, Inc. v. Kobayashi*
    *+ Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1014 (N.D. Cal. 2016)............... 2

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................................... 4

*Calix Networks, Inc. v. Wi-Lan, Inc.*,
    No. 09-cv-06038-CRB (DMR), 2010 WL 3515759 (N.D. Cal. Sept. 8, 2010) ...... 8

*Cleanview Distribution Group LLC et al v. LGI Holdings, LCC, et al*,
    Case No. 2:21CV07178 ................................................................................2, 3, 7

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................................ 5

*DiGiacinto v. RB Health (US) LLC*,
    668 F. Supp. 3d 950 (N.D. Cal. 2023) .............................................................. 12

*Endres v. Wells Fargo Bank*,
    No. C 06-7019 PJH, 2008 WL 344204 (N.D. Cal. Feb. 6, 2008) ......................... 8

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
    905 F.3d 597 (9th Cir. 2018)............................................................................... 5

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................. 10

*Gen. Bedding Corp. v. Echevarria*,
    947 F.2d 1395 (9th Cir. 1991) ............................................................................ 9

*Gibson v. Jaguar Land Rover N. Am., LLC*,
    No. CV 20-00769, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ....................... 14

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
   82 Cal. App. 3d 65 (1978) ............................................................................................. 13

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ...................................................................................................... 1

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) .................................................................................... 5, 6

*Johnson v. Mitchell*,
   No. CIV S-10-1968 GEB, 2012 WL 1657643 (E.D. Cal. May 10, 2012) ............................ 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................... 10, 11

*Kline v. Turner*,
   87 Cal. App. 4th 1369 (2001) ....................................................................................... 9

*Lauricella v. Cordis Corp.*,
   No. C 07-2016 SBA, 2009 WL 10710498, at *1 (N.D. Cal. Sept. 30, 2009) ......................... 4

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ....................................................................................... 12

*LNS Enters. LLC v. Cont'l Motors, Inc.*,
   22 F.4th 852 (9th Cir. 2022) ........................................................................................ 6

*Loomis v. Slendertone Distribution, Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) .................................................................... 5, 12

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ........................... 14

*Macias v. LG Chem Ltd.*,
   No. SACV2002416DOCADSX, 2021 WL 780478 (C.D. Cal. Feb. 28, 2021) ..................... 6

*Massachusetts Mut. Life Ins. Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (2002) ....................................................................................... 9

*McCready v. Am. Honda Motor Co.*,
   No. C 05-5247 SBA, 2006 WL 1708303, at *4 (N.D. Cal. June 19, 2006) ........................ 9

*NBCUniversal Media, LLC v. Superior Ct.*,
   225 Cal. App. 4th 1222 (2014) ..................................................................................... 9

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ......................................................................... 13

*In re NVIDIA GPU Litig.*,
   No. C 08-04312 JW, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ................................ 13

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- iii -

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .................................................................................... 4

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) .............................................................................. 9

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) ...................................................................... 13

*Seedman v. Cochlear Americas*,
   No. SACV1500366JVSJCGX, 2015 WL 4768239, at *3-5 (C.D. Cal. Aug. 10,
   2015) ............................................................................................................................. 6

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ............................................................ 5, 7, 8, 14

*Shay v. Apple Inc.*,
   No. 20CV1629-GPC(BLM), 2021 WL 1733385 (S.D. Cal. May 3, 2021) ................ 13

*Smith v. Ford Motor Co.*,
   749 F. Supp. 2d 980 (N.D. Cal. 2010) ...................................................................... 11

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................................... 14

*Strayer v. Idaho State Patrol*,
   No. 21-35247, 2022 WL 685422 (9th Cir. Mar. 8, 2022) .......................................... 5

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) ........................................................................................ 8

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ............................................................................................ 4, 7

*Xavier v. Philip Morris USA, Inc.*,
   787 F. Supp. 2d 1075 (N. D Cal. 2011) .................................................................... 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) .................................................................................... 5

*Yamashita v. LG Chem, Ltd.*,
   62 F.4th 496 (9th Cir. 2023) ................................................................................... 6, 7

*Zellerino v. Roosen*,
   No. SACV 16-485-JLS, 2016 WL 10988763 (C.D. Cal. Aug. 22, 2016) ................... 1

**Other Authorities**

Rule 9(b) .................................................................................................................. 10, 11, 12

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MARTIAN SALES'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT
CASE NO. 3:23-CV-06202
1100611951\8\AMERICAS

Rule 12(b) .................................................................................................................1, 8, 9

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**REPLY BRIEF**

### I.     INTRODUCTION

Martian Sales, Inc. ("Martian Sales") is a corporation with a sole owner, Mark Reilly, and no parent or sister companies. It is also the only defendant in this case. But Plaintiffs' Opposition does not address a single fact supporting jurisdiction over the actual defendant, Martian Sales. Instead, Plaintiffs attempt to distract the Court with unproven, and untrue, hearsay regarding the California activities of other individuals and entities, none of which are owners, parent companies, or subsidiaries of Martian Sales.

However, even if the Court assumes Plaintiffs' unsupported statements in their opposition brief are true for the purpose of this Motion, there is no legal support for disregarding Martian Sales' corporate form and imputing the contacts of other entities to it. And Plaintiffs' request for jurisdictional discovery would only encourage a time-consuming and costly fishing expedition. Martian Sales has provided the Declaration of Mark Reilly specifically denying that Martian Sales operates, conducts, engages in, carries on, or transacts business of any kind in California.

Further, the Court should dismiss Plaintiffs' Complaint for failure to state a claim. Plaintiffs concede their negligent misrepresentation and unjust enrichment claims are not legally cognizable and require dismissal. As to Plaintiffs' remaining claims, their CLRA, UCL, and FAL claims fall outside the applicable statute of limitations. Also, Plaintiffs' consumer law claims, breach of implied warranty claim, and request for equitable remedies all fail to meet the requisite pleading standards.

### II.     DEFENDANT MARTIAN SALES IS NOT SUBJECT TO THE COURT'S JURISDICTION, AND THIS CASE SHOULD BE DISMISSED UNDER RULE 12(B)(2).

#### A.     Martian Sales Is Not Subject to General Jurisdiction in California.

Substantial, systematic, and continuous contacts between Martian Sales and California cannot be established. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984) (general jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum); *Zellerino v. Roosen*, No. SACV 16-485-JLS, 2016 WL 10988763, at *5 (C.D. Cal. Aug. 22, 2016) ("Zellerino fails to respond to the argument that the

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Court cannot exercise general personal jurisdiction over either Equifax or Datamyx, thereby conceding the point."). Plaintiffs similarly effectively concede this point, as they do not argue general jurisdiction applies to Martian Sales. Opp. at 4 - 9 (discussing only specific jurisdiction). Therefore, it is uncontested that an exercise of general jurisdiction is improper as to Martian Sales, which is a Wyoming corporation with its principal place of business in Wyoming.

## B.  Martian Sales Is Not Subject to Specific Jurisdiction in California.

The Court also lacks specific jurisdiction over Martian Sales.  Specific jurisdiction requires the following three factors: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1014 (N.D. Cal. 2016).  Mr. Reilly's declaration (Dkt. 16-1) demonstrates unequivocally that Martian Sales has not purposefully directed activities to the State of California.

In a misguided attempt to counter Mr. Reilly's declaration, Plaintiffs rely on two things: (1) filings in *Cleanview Distribution Group LLC et al v. LGI Holdings, LCC, et al*, Case No. 2:21CV07178 (Central District of California) ("the *Cleanview* litigation")[1] and (2) the OPMS website referencing contact information for Choice Organics (not Martian Sales) in Los Angeles, California.[2] Opp. at 6 - 9 . However, in both instances, Plaintiffs point only to the purported actions

---

[1] *Cleanview* involved an acquisition deal that ultimately soured involving various entities and individuals (but not Martian Sales) and the sale of bulk kratom. *See, e.g.,* Declaration of Neal Deckant, Exhibit A. Nothing in the *Cleanview* Complaint suggests that these bulk kratom purchases definitively resulted in O.P.M.S.-branded kratom products, which are the sole products at issue in this case. *See Id.*

[2] Plaintiffs appear to infer a relationship between Martian Sales and Choice Organics from the fact that Choice Organics is a downstream distributor that is referenced as part of a "team" on the O.P.M.S. website, but Plaintiffs make no specific allegations nor provide any evidence to support an actual relationship between Martian Sales and Choice Organics. In any event, there is nothing in Plaintiffs' inference that is inconsistent with Mr. Reilly's declaration that Martian Sales sells only to a single distributor located outside California (thus, **not** Choice Organics), and that Martian

of other companies and individuals, not Martian Sales.  Neither the *Cleanview* litigation nor the O.P.M.S. website identify California contacts of ***Martian Sales*** related to Plaintiffs' cause of action.

### 1.    Actions of Separate Entities and Individuals Cannot Be Imputed to Martian Sales to Establish Personal Jurisdiction.

Specific jurisdiction does not exist as to Martian Sales, and the Court should lend no credence to Plaintiffs' Opposition.  Martian Sales sells OPMS kratom products to a single wholesale distributor that is not located in California, and it does not control any aspect of further distribution of those products after sale (*see* Reilly Decl. ¶ 16).  Nothing in Plaintiffs' Opposition counters this fact.  Rather, in a rambling journey through the allegations in the *Cleanview* litigation, Plaintiffs highlight the purported California activities of LGI Holdings, LLC, Alphabet Wholesale, Inc., Alphabet Wholesale, LLC, Peyton Palaio, Ted Palaio, Lawrence Larsen, Mark Jennings, and Jason Foster. *See* Deckant Decl., Ex. A. Yet, none of those entities or individuals are Martian Sales.  And tellingly, Martian Sales was neither party to the *Cleanview* litigation nor referenced in any manner in the *Cleanview* Complaint or the Palaio declaration[3] cited by Plaintiffs. In a bait and switch trick more suited to a street magician than a licensed attorney,[4] Plaintiffs try to transpose the activities of those other entities and individuals to ones of Martian Sales by sweepingly proclaiming those other entities are "a series of shell companies[5] and affiliates[6] all owned and operated by Peyton (or Payton) Palaio, owner and operator of Martian Sales." Opp. Br., at 6, n. 1.

---

Sales does not otherwise sell, distribute, or market O.P.M.S. products in California. Reilly Decl. ¶¶ 11-16.

[3] Indeed, Mr. Palaio's declaration (which does not mention Martian Sales) expressly denies many of the entities are "separately existing" or part of a "web of companies." Declaration of Peyton Palaio ¶¶ 1, 4, *Cleanview Distribution Group LLC et al v. LGI Holdings, LLC et al,* Case No. 2:21CV07178 (ECF No. 37-1).

[4] Plaintiffs "creatively transform" allegations involving other entities' contracts and actions into ones of Martian Sales. *See* Opp. at 6 (noting various actions of "Defendant"). As Martian Sales is neither named a party nor referenced in the *Cleanview* litigation, it strains credulity that these actions should somehow be attributable to Martian Sales.

[5] Plaintiffs' Opposition offers no facts to support their allegation these entities are "shell companies," much less "shell companies" for Martian Sales.

[6] Plaintiffs' Opposition offers no facts to support their allegation that any of these companies are legally "affiliated" in any manner with Martian Sales, including by contract or otherwise.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

2

Even assuming these groundless assumptions were true, which they are not, they are insufficient
to impose personal jurisdiction over Martian Sales.

3

First, Martian Sales is a distinct corporate entity with a single owner, Mark Reilly.  And it

4

is black letter law that the "'minimum contacts' necessary to create specific jurisdiction . . . . must

5

arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*,

6

134 S. Ct. 1115, 1121-22 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

7

(1985)). The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused

8

'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and

9

the forum State." *Id.* (collecting cases). As to **Martian Sales's** purported California behaviors,

10

Plaintiffs submit no evidence, because there is none.

11

Second, to the extent that Plaintiffs suggest separate entities and individuals are alter egos

12

such that their jurisdictional contacts can be imputed to Martian Sales, they are wrong. *See* Opp.

13

at 6. Plaintiffs assert this "alter ego" theory for the first time in Opposition.  There are no

14

allegations in the Complaint to support imposition of alter ego jurisdiction in this case. *Lauricella*

15

*v. Cordis Corp.*, No. C 07-2016 SBA, 2009 WL 10710498, at *1 (N.D. Cal. Sept. 30, 2009)

16

("Plaintiff must allege facts showing that the Defendant's intentional actions had some effect in

17

California so that the Defendant, a non-resident, is not required to defend itself in California in an

18

action that had a minimal (or possibly no) effect in the state."). Thus, not only do Plaintiffs fail to

19

make a *prima facie* showing that any of these entities or individuals are alter egos of Martian Sales

20

or that Martian Sales has failed in any manner to observe corporate formalities, there is no legal or

21

factual basis for imputing various separate entities' California behaviors onto Martian Sales simply

22

because they are (allegedly) affiliated or (allegedly) share ownership. The Ninth Circuit has

23

explained that the "alter ego test" for personal jurisdiction "is designed to determine whether the

24

parent and subsidiary are 'not really separate entities,' such that one entity's contacts with the

25

forum state can be fairly attributed to the other." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir.

26

2015).

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

MARTIAN SALES'S REPLY IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT
CASE NO. 3:23-CV-06202
1100611951\8\AMERICAS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Not only do Plaintiffs lack any allegations suggesting a relationship between these various entities and Martian Sales, they fail to suggest *any* evidence that Martian Sales and the various entities are so interrelated that jurisdiction should arise under an alter ego theory. At the end of the day, Martian Sales is a distinct corporation with a single owner, Mark Reilly. Plaintiffs do not offer any meaningful evidence  to rebut this simple truth.

**2.      Plaintiffs Have Not Met Any of the Specific Personal Jurisdiction Factors.**

Critically, Plaintiffs' alleged evidence fails to satisfy any of relevant specific personal jurisdiction factors. As an initial matter, Plaintiffs set forth the wrong standard for their claims, stating that the Court should consider whether Martian Sales "purposefully availed" itself of the privilege of conducting activities in California. *See* Opp. at 5. However, the proper analysis for Plaintiffs' claims, which are tort-based rather than contractual, is whether Defendant ***purposefully directed*** any activities towards the state of California. *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1067 (S.D. Cal. 2019) (purposeful direction test used for UCL, CLRA, and breach of implied warranty claims); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 904 (N.D. Cal. 2021) (same). It did not.

"'For claims sounding in tort' where the alleged conduct took place outside the forum state," courts in the Ninth Circuit apply a "purposeful direction test." *Strayer v. Idaho State Patrol*, No. 21-35247, 2022 WL 685422, at *2 (9th Cir. Mar. 8, 2022); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) ("[I]n cases involving tortious conduct, we most often employ a purposeful  direction analysis."); *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 605 (9th Cir. 2018) ("[P]urposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state."). This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

"The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

F.3d 450, 459 (9th Cir. 2007). Nor does the mere act of placing a product into the stream of commerce satisfy the purposeful availment test, "even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2022) (quoting *Holland Am. Line Inc.*, 485 F.3d at 459); *see also Macias v. LG Chem Ltd.*, No. SACV2002416DOCADSX, 2021 WL 780478, at *4 (C.D. Cal. Feb. 28, 2021) ("A defendant purposefully avails itself of the forum state when it takes action to 'target' that specific state."). For example, in *Seedman v. Cochlear Americas*, the court considered whether it could exercise specific jurisdiction over a foreign manufacturer of cochlear implants. No. SACV1500366JVSJCGX, 2015 WL 4768239, at *3–5 (C.D. Cal. Aug. 10, 2015).  As is the case here (*see* Reilly Decl. ¶¶ 11-17), the foreign manufacturer conducted no manufacturing, marketing, or selling of products in California, although its distributor sold the implants in California. *Id.* at *5. The court concluded that the plaintiff had not sufficiently demonstrated specific jurisdiction over the foreign manufacturer because he did not point to what "more" the foreign manufacturer did to target its product in the forum state[7]. *Id.*

Here too, Martian Sales submitted evidence that: O.P.M.S. products are provided to an out-of-state (non-Californian) distributor; Martian Sales does not individually distribute O.P.M.S. products to the State of California; Martian Sales does not have contracts with any entities that are domiciled in California; and (most critically) Martian Sales does not have any control over the downstream distribution chain, after providing the product to the out-of-state distributor. Reilly Decl. ¶¶ 11-16. Accordingly, a stream of commerce theory cannot be applied to satisfy the purposeful direction prong of the personal jurisdiction analysis, as Martian Sales lacks any control over the ultimate distribution of O.P.M.S. products. Nothing in Plaintiffs' Opposition contradicts this fact.  *See Yamashita*, 62 F.4th at 504 (sworn affidavits support lack of purposeful availment). While Plaintiffs reference Choice Organics, they have not established any connection to Choice

---

[7] Plaintiffs' wrongly interpret *Yamashita.* There, the court found that personal jurisdiction did not exist over the manufacturer because the evidence "[did] not show purposeful availment, but only a bare stream of commerce." *Id.* Lack of evidence that the manufacturer "***deliberately*** navigates the stream of commerce" through "creat[ing], control[ling], or employ[ing] the distribution" precludes a finding of purposeful activity towards the forum state and thereby forecloses personal jurisdiction. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Organics or shown that Martian Sales sold any products to it. Martian Sales expressly disclaims any control over the downstream distribution chain of O.P.M.S. products. Reilly Decl. ¶ 16. At most, Plaintiffs' purported evidence supports a "bare stream of commerce" theory, which cannot suffice for personal jurisdiction. *Yamashita*, 62 F.4th at 504. ("Third, Yamashita points to the various consumer products sold in Hawaii containing LGC's 18650 lithium-ion batteries. On their own, these sales do not show purposeful availment, but only a bare stream of commerce.").

Further, Plaintiffs fail to engage with the second aspect of the specific personal jurisdiction inquiry—whether the claim arose out of Martian Sales's purported California activities. Regarding this prong of the analysis, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. "[I]t is the defendant, ***not the plaintiff or third parties***, who must create contacts with the forum State." *Id.* at 291 (emphasis added). In the Ninth Circuit, courts apply a "but for" test to determine whether Plaintiff would have been injured "but for" a defendant's forum-related conduct. *Sharma*, 524 F. Supp. 3d at 904.

Plaintiffs provide no evidence that "but for" Martian Sale's actions in California, of which there are none, they would they have suffered their purported claims. As an initial matter, Martian Sales was not involved in the *Cleanview* litigation and nothing in the *Cleanview* dispute, which involved a contractual breach, relates to this case. Plaintiffs make multiple incorrect evidentiary statements, including that "Defendant [referring to Martian Sales], after importing kratom through California ports and storing it in California warehouses, funneled its finished kratom Products back into the California market through its distribution arm, which has a California address, along with a customer service address in California." Opp. at 9. As more fully discussed above, Martian Sales has not sold any products to a distributor in California (*see* Reilly Decl. ¶¶11-16), and Plaintiffs utterly fail to support their deceptive contortion of the *Cleanview* allegations regarding other entities into ones involving Martian Sales (*see, e.g.,* Deckant Decl., Ex. A.).

Because Plaintiffs' Opposition fails to set forth even a scintilla of evidence that ***Martian Sales***, an independent corporate entity, has engaged in any California conduct that would render

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

an exercise of personal jurisdiction proper, the Complaint must be dismissed for lack of personal jurisdiction. *Sharma*, 524 F. Supp. 3d at 904–05 ("Plaintiffs identify no act performed by Bosch in California, whether related to development or manufacturing. Plaintiffs have also made no allegations that Bosch advertised the product in or directed communications about the product to California. Absent such conduct, the Court finds that Bosch's California activities were not the 'but for' source of the harm that Plaintiffs suffered.").

### C.      Plaintiffs Are Not Entitled to Jurisdictional Discovery.

In a final act of desperation to save their Complaint, Plaintiffs ask this Court to allow jurisdictional discovery. However, Plaintiffs fail to provide the Court with any legitimate reason why such discovery should be allowed as they have failed utterly to identify ***any*** fact that contradicts the statements in Mark Reilly's declaration. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted). "[L]imited discovery should not be permitted to conduct a fishing expedition." *Johnson v. Mitchell*, No. CIV S-10-1968 GEB, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (internal quotation marks and citations omitted). Plaintiffs fail to present even a colorable argument as to how any jurisdictional discovery would yield information supporting personal jurisdiction. *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-06038-CRB (DMR), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (A plaintiff must present "a 'colorable basis' for jurisdiction, or 'some evidence' constituting a lesser showing than a prima facie case."). Accordingly, the Court should deny Plaintiffs' request for jurisdictional discovery and dismiss this action pursuant to Rule 12(b)(2).

### III.      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED UNDER RULE 12(b)(6).

### A.      The Delayed Discovery Rule Is Inapplicable.

The delayed discovery rule permits a statute to run from the time a reasonable person would have discovered the basis for a claim. *Endres v. Wells Fargo Bank*, No. C 06-7019 PJH, 2008 WL 344204, at *6 (N.D. Cal. Feb. 6, 2008) (discovery rule applies to CLRA actions) (*citing*

*Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002). Significantly, however, the delayed discovery rule "does not postpone the accrual of a cause of action until a plaintiff *actually* discovers the relevant facts." *McCready v. Am. Honda Motor Co.*, No. C 05-5247 SBA, 2006 WL 1708303, at *4 (N.D. Cal. June 19, 2006) (emphasis in original) (citing *Kline v. Turner*, 87 Cal. App. 4th 1369, 1375 (2001)). Rather, the rule provides that a cause of action begins to accrue as soon as a plaintiff has "notice or information of circumstances that would have put a reasonable person on inquiry, or [has] the opportunity to obtain knowledge from sources open to their investigation." *Id*. (*citing Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)). To invoke the delayed discovery rule in a complaint, a plaintiff has "to plead facts showing: (1) lack of knowledge; (2) lack of means of obtaining knowledge; and (3) how and when the fraud or mistake was actually discovered." *Id.* (citing *Gen. Bedding Corp.,* 947 F.2d at 1397).

Plaintiffs' own Complaint alleges that: "[t]he addictiveness of kratom has been well-documented for decades and is an established fact in the medical literature." Compl. ¶ 67. At a minimum, the evidence establishes that Plaintiffs had inquiry notice of any risk as to kratom's purported "addictiveness" through information Plaintiffs' themselves acknowledge is both public and widely-available. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (noting that statute of limitations had expired where the plaintiff did not allege when she discovered the defect, or why, in the exercise of reasonable diligence, she could not have discovered it earlier.); *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1235 (2014) (a plaintiff is on inquiry and charged with information available in public records). Further, Plaintiffs' Complaint is rife with allegations that support Plaintiffs' abilities to discover kratom's purported "addictiveness" in the exercise of reasonable diligence. In fact, Plaintiffs allege that, since "1836" kratom was purportedly used as a substitute for "opium," and that kratom's "addictiveness" has been studied in the United States since 1988. Compl. ¶ 15, 48. The Complaint further sets out nearly three whole pages of Reddit posts detailing user experiences with kratom.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Id.* ¶ 42. Given the breadth of information available to Plaintiffs, the delayed discovery rule does not apply.

### B.    Plaintiffs Do Not Plead Their Claims With the Requisite Specificity.

Plaintiffs make only general allegations regarding the time and place of the alleged misrepresentation(s).  Much more is required by Rule 9(b). For example, in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), the Ninth Circuit held the plaintiff's allegations failed to meet Rule 9(b) requirements because not only did he fail to allege "the particular circumstances" of the alleged misrepresentations, he also failed to "specify when he was exposed to [the alleged misrepresentations] or which ones he found material" and "*which sales material* he relied upon." *Id.* at 1126 (emphasis added). Similarly, the Court in *Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. 2014) found a plaintiff's failure to identify with specificity how and where he viewed the alleged misrepresentations violated Rule 9(b). *Id.* at 1011. The fraud allegations in *Frenzel* were also inadequate because, despite "referenc[ing] a number of specific statements," the complaint "fail[ed] to specify which, if any, of these statements [plaintiff] personally reviewed and relied on." *Id.* at 1014.   Instead, the plaintiff "broadly allege[d] that [he] 'reviewed [defendant's] marketing materials and representations,' and that he purchased [the product at issue] 'based on those representations.'" *Id*. The Court found this to be an "incredible claim that [plaintiff] reviewed all existing representations by [defendant] and relied on all of them in deciding to purchase" the product at issue. *Id.*

Here too, while Plaintiffs broadly assert that they "reviewed the O.P.M.S. packaging and labels," (Compl. ¶ 89, 92), they fail to allege, **what** specific labeling or packaging materials they reviewed, and **what** specific language they relied upon. Moreover, Plaintiffs' allegations are called into question as C.M. made purchases in various different mediums (i.e. online and in-person), and therefore presentation of labeling will differ, and that M.C. could not even review the relevant text as it was "nearly impossible for her to read." Compl. ¶¶ 89, 92. Plaintiffs do not satisfy 9(b).

Plaintiffs similarly still fail to allege reliance. Reliance on a false statement is an essential requirement to bring a claim under the CLRA, FAL, and UCL. *See In re Actimmune Marketing*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Litigation*, No. C 08-02376 MHP, 2010 WL 3463491, at *8 (N.D. Cal., Sept. 1, 2010), *aff'd*, 464 F. App'x. 651 (9th Cir. 2011) (plaintiff must plead "actual reliance" under UCL where the pleadings assert a cause of action grounded in misrepresentation or deception); *Kearns*, 567 F.3d at 1125-26 (plaintiff did not adequately plead reliance where he did not identify specific advertisements or sales material he actually relied on); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (holding that while plaintiffs identified a "range of statements" on various websites and the product packaging, and alleged that they generally relied on defendant's misrepresentations and omissions in making their purchase, plaintiffs' fraud claims failed because plaintiffs did not explicitly specify which statements they saw or relied on in deciding to buy the product). Here, Plaintiffs fail to allege or identify with the specificity required under Rule 9(b) any false representation by Martain Sales that they actually read and relied upon when purchasing O.P.M.S. products.  Instead, Plaintiffs allege that they unilaterally decided to purchase kratom based on information and advice from separate individuals. *See* Compl. ¶¶ 89, 92 ("C.M. first heard about kratom through a friend [. . .] M.C. first learned about kratom from a relative [. . .]"). And, notably, nowhere in Plaintiffs' Complaint do they allege that they would have declined to purchase O.P.M.S. kratom, had the disclosures been made. *See, e.g., Id.* Plaintiffs therefore fail to establish reliance.

Plaintiffs additionally still fail to establish any purported duty on behalf of Martian Sales to disclose kratom's purported "addictiveness." Plaintiffs' arguments in Opposition and the allegations in the their Complaint of "exclusive" knowledge are conclusory and contradictory. "Under California law, there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Smith v. Ford Motor Co.,* 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (citing *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997)). Plaintiffs and Defendant were not in a fiduciary relationship, meaning that only the remaining

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

three factors could foreseeably apply. Plaintiffs' Opposition states that "Defendant had exclusive knowledge about kratom's addictiveness," (Opp. at 19), and continues to cite various allegations in the Complaint that "kratom is relatively unknown." *Id.* Yet, Plaintiffs' ***own Complaint*** belies this assumption, as Plaintiffs allege: "[i]t has been known for ***decades in the English-speaking world*** that kratom is highly addictive and has the potential to cause physical and psychological dependence in regular users. It has been known for over a ***century*** in Southeast Asia that kratom is addictive." Compl. ¶ 68[8]. Plaintiffs' own allegations belie any contention that Martian Sales had "exclusive" knowledge of a fact that (according to Plaintiffs) has been known for decades—and perhaps even centuries—amongst the "English-speaking world." *Id.* The remaining two factors cannot apply, when—as Plaintiffs note—the potential for kratom's addictiveness is disclosed in O.P.M.S.'s website, incorporated by the product's disclaimer. *See* Compl. ¶ 67.

Further, Plaintiffs' Fraudulent Omission claim fails without intent and reliance. Plaintiffs cannot prove reliance, as discussed *supra. DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 967 (N.D. Cal. 2023) (stating elements of fraudulent omissions claim). Nor have they alleged intent to defraud, where O.P.M.S.'s disclaimer language readily advises purchases of kratom's purported "addictiveness" (Compl. ¶ 67), and this is a fact apparently known by the entire "English-speaking world." (Compl. ¶ 68). Plaintiffs' claims therefore fail under Federal Rule of Civil Procedure 9(b).

## C.      Plaintiffs Breach of Implied Warranty Claim Fails.

The third-party beneficiary doctrine (*see* Opp. at 22-24), does not apply to Plaintiffs' claims. It is notable that "no published decision of a California court has applied this [third party beneficiary exception] doctrine in the context of a consumer claim against a product manufacturer." *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1089 (S.D. Cal. 2019) (quoting *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017)); *see also*

---

[8] The Complaint states: "The addictiveness of kratom has been well-documented for decades and is an established fact in the medical literature. The pharmacological effects of MG and 7-MG have been thoroughly studied, and it is well-established that MG and 7-MG act on the same mu-opioid receptors in the brain as traditional opioids. Further, there are widespread user reports and case studies of addiction and dependency issues." Compl. ¶ 67.

*Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1083 (N. D Cal. 2011) ("No reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale."); *Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 1733385, at *7 (S.D. Cal. May 3, 2021) (same).

The cases that Plaintiffs rely on are all district court decisions that have adopted the third-party beneficiary exception theory from *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69-70 (1978). However, that case, which concerned claims against a roofing sub-contractor, held that the plaintiff could bring such action for breach of an implied warranty of fitness against the sub-contractor because he, the owner of a building who was not named in the contract, was the intended third-party beneficiary of the contract between the contractor and the roofing subcontractor. *Id.* at 69-70.   However, "*Gilbert* is specific to its facts and has limited bearing" on consumer product actions. *Shay*, 2021 WL 1733385, at *7.

While courts are split on recognition of the third-party beneficiary exception to the privity requirement, the cases that recognize it require a plaintiff to show that he was a third-party beneficiary of a contract between the defendant and a third party. *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, at *7 (N.D. Cal. Nov. 19, 2009) (exception to the privity requirement for a breach of implied warranty of merchantability claim if a plaintiff can show that he was a third-party beneficiary of a contract between the defendant and a third party); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 924 (N.D. Cal. 2018) ("Huawei concedes that the relevant states allow plaintiffs to bring implied warranty claims in the absence of privity if the plaintiff shows that he was a beneficiary to a contract between the defendant and a third party."). Martian Sales does not sell to end-retailers, and Plaintiffs do not (and cannot) allege or argue that they are intended third-party beneficiaries of any contract between Martian Sales and its wholesale distributor. *See* Reilly Decl. ¶ 16.   The breach of implied warranty claim fails.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

### D.        Plaintiffs' Equitable Claims Must Be Dismissed.

Plaintiffs cannot overcome binding Ninth Circuit authority in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), which requires dismissal of their equitable relief claims. The "clear rule" from Sonner is that "plaintiffs must plead the inadequacy of legal remedies before requesting equitable relief[.]" *Adams v. Cole Haan, LLC*, No. Sacv-20-913, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("The Ninth Circuit has very recently made clear that this principle applies to claims for equitable relief under both the UCL and CLRA.").

Aside from barebones recitations of the legal standard, Plaintiffs do not allege an inadequacy of legal remedies, and Plaintiffs' arguments to avoid dismissal under *Sonner* all fail. In fact, courts have found, at the pleadings stage, that the exact allegations set forth by Plaintiffs, including their allegations that the alleged injury is "[a] result of their reliance on partial representations and/or omissions by Defendants" insufficient under *Sonner*. *See Sharma*, 524 F. Supp. 3d at 907–08 (allegations that "neither Plaintiff has an adequate legal remedy because damages are 'not equally certain' and 'are not necessarily the same amount'" and that Plaintiffs "lack an adequate remedy at law to prevent future harm" were insufficient at the pleadings stage under *Sonner*); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) ("Because Plaintiffs' claims rest on their alleged overpayments and Apple's failure to issue refunds, the Court finds that monetary damages would provide an adequate remedy for the alleged injury."); *see also Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC(GJSx), 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("[T]here is nothing in the [complaint] to suggest that monetary damages would not make Plaintiff or the putative class whole."). Plaintiffs' argument should be disregarded in full.

## IV.    CONCLUSION

For the above reasons, this Court should dismiss each of Plaintiffs' claims with prejudice.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

Dated: March 22, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Squire Patton Boggs (US) LLP

By: /S/ Adam R. Fox
　　　　Adam R. Fox
　　　　Helen Yang
　　　　Erin M. Gilmore
　　　Attorneys for Defendant
　　　MARTIAN SALES, INC.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071