1   MICHELE D. FLOYD (State Bar No. 163031)
    KILPATRICK TOWNSEND & STOCKTON LLP
2   Two Embarcadero Center, Suite 1900
    San Francisco, CA 94111
3   Telephone:    (415) 576-0200
    Facsimile:    (415) 576-0300
4   E-Mail:       mfloyd@ktslaw.com

5   GWENDOLYN C. PAYTON (*Pro Hac Vice*)
    KILPATRICK TOWNSEND & STOCKTON LLP
6   1420 Fifth Avenue, Suite 3700
    Seattle, Washington 98101
7   Telephone:    (206) 626-7714
    Facsimile:    (206) 623-6793
8   E-Mail:       gpayton@ktslaw.com

9   Attorneys for Defendants
    MARTIAN SALES, INC., PEYTON SHEA PALAIO, JOPEN LLC
10  LGI HOLDINGS, LLC, LP IND., LLC, CAG HOLDINGS CO, LLC,
    CALIBRE MANUFACTURING, LLC, AND NUZA, LLC

11

12

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17  C.M. and M.C., on behalf of themselves and all      Case No. 3:23-cv-06202-AMO
    others similarly situated,
18                                                       **DEFENDANTS' NOTICE OF MOTION
                   Plaintiff,                            AND MOTION TO DISMISS**
19
           v.                                            **[FED. R. CIV. PROC. 12(B)(2); 12(B)(6)]**
20
    MARTIAN SALES, INC. (d/b/a CHOICE                    Date:     March 6, 2025
21  ORGANICS); PEYTON SHEA PALAIO                        Time:     2:00 p.m.
    (a/k/a PAYTON PALAIO or PEYTON                       Ctrm.:    10, 19th Floor
22  PALAIA); JOPEN LLC (d/b/a A1                         Judge:    Honorable Araceli Martinez-Olguin
    WHOLESALE, PARTY NUTS,
23  EVOLUTIONARY ORGANICS, INNOVO                        First Amended Complaint Filed: 08/30/2024
    ACTIVAS, AMERICAN KRATOMD); LGI
24  HOLDINGS, LLC (d/b/a ALPHABET
    WHOLESALE); LP IND., LLC (d/b/a
25  OLISTICA LIFE SCIENCES GROUP,
    CENTRALIZED SERVICES, JORDAN
26  PROCESS, CASCADE NATURALS,
    DELLA TERRA PHARMACEUTICALS,
27  NATUREA BIOMATERIALS [a/k/a
    CANNOPY CORPORATION]); CAG
28  HOLDINGS CO, LLC (d/b/a COMPANION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AG); CALIBRE MANUFACTURING, LLC
(f/k/a ADVANCED NUTRITION, LLC);
NUZA, LLC (a/k/a NUZA LOGISTICS, f/k/a
ADVANCED NUTRITION, LLC); JOHN
DOE CORPORATIONS 1-10; and OTHER
JOHN DOE ENTITIES 1-10,

Defendant.

1

**TABLE OF CONTENTS**

2

Page

3

I.    INTRODUCTION .................................................................................1

4

II.   FACTS ................................................................................................3

5

      A.    Plaintiffs' alleged Personal Jurisdiction Facts. ..................................3

6

      B.    Alleged Facts Supporting Plaintiffs' Claims.......................................4

7

      C.    Kratom-Related Facts Subject to Judicial Notice. .............................5

8

III.  ARGUMENT ......................................................................................7

9

      A.    Plaintiffs Fail to Allege Personal Jurisdiction Over Any
            Defendant. ..................................................................................7

10

11          1.    The Court Allowed Plaintiffs to Amend to Allege an
                  Alter Ego Theory of Personal Jurisdiction but They
                  Failed..................................................................................7

12

13                (a)   Plaintiffs Fail to Allege Facts Identified by this
                        Court as Supporting Alter Ego Jurisdiction. ...........................8

14                (b)   The Alter Ego Theory Fails Because There is
                        No Personal Jurisdiction Over Any  Defendant
15                      in California. ...........................................................9

16          2.    Plaintiffs Fail to Allege That This Court Has Personal
                  Jurisdiction Over Any of the Defendants................................9

17
            3.    Plaintiffs assert general jurisdiction but fail to allege
18                even a single fact supporting general jurisdiction....................9

19          4.    Plaintiffs fail to allege specific personal jurisdiction
                  over Defendants. .............................................................11

20

      B.    Even If Jurisdiction Exists, Plaintiffs Have Failed to State Any
21          Claim for Relief............................................................................12

22          1.    Plaintiffs Fail to Allege Plausible Facts to Satisfy Rule
                  9(b) or Rule 8. .................................................................12

23
                  (a)   The UCL and CLRA Claims Fail Because
24                      Plaintiffs Failed to Specifically Allege
                        Materiality, Duty or Reliance......................................14
25
                        (i)   Plaintiffs' claims that Defendants
26                            "knew" kratom had opioid like
                              addictive qualities is implausible. ...................14
27
                        (ii)  Plaintiffs Fail to Allege That Any
28                            Defendant Had Pre-Purchase

**TABLE OF CONTENTS**
(continued)

Page

Knowledge That Kratom Has the
Opioid-Like Addictive Qualities...................................15

(iii)   Plaintiffs Fail to Allege Reasonable
Reliance in Alleging That They Relied
on Third Parties in Making Their
Purchasing Decisions. ....................................................17

(iv)   Plaintiffs Do Not Allege Facts Giving
Rise to a Duty to Disclose..............................................18

(b)   Plaintiffs' FAL and Negligent
Misrepresentation Claims Must Be Dismissed
Because They Cannot Be Premised on an
Omission. ....................................................................19

(c)   Plaintiffs' Implied Warranty Claims Fail...................................21

2.   Unjust enrichment is a remedy, not a claim for relief
and therefore falls with the other claims for relief...............................21

3.   Plaintiffs Have No Standing to Seek Injunctive Relief.......................22

4.   All of Plaintiff M.C.'s Claims are Barred by the Statute
of Limitations. ....................................................................23

(a)   The UCL and Breach of Warranty Claims Are
Barred by a Four-Year Statute of Limitations...........................23

(b)   The CLRA, FAL and Fraudulent Omission
Claims are Barred by a Three-Year Statute of
Limitations. ....................................................................24

(c)   The Unjust Enrichment and Negligent
Misrepresentations Claims are Barred by a
Two-Year Statute of Limitations. .............................................24

IV.   CONCLUSION .....................................................................25

1

**TABLE OF AUTHORITIES**

2

Page

3

**<u>TABLE OF AUTHORITIES</u>**

4

**Page(s)**

5

**Cases**

6

*Mocek v. Alfa Leisure, Inc.*,

7

    114 Cal. App. 4th 402 (2003) ................................................................................. 21

8

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*,

9

    No. 14–cv–02147–LHK, 2015 WL 5118509 (N.D. Cal. Aug. 31, 2015) .............................. 13

10

*Am. Student Fin. Grp. v. Aequitas Cap. Mgmt., Inc.*,

    No. 12-cv-2446-CAB (JMA), 2014 WL 12165417 (S.D. Cal. Nov. 3, 2014) ...................... 20

11

*Ashcroft v. Iqbal*,

12

    556 U.S. 662 (2009) ........................................................................................... 12

13

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,

    223 F.3d 1082 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue*

14

    *Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) .......................... 10, 11

15

*BDK USA, Inc. v. FH Grp. Int'l, Inc.*,

16

    No. 2:20-cv-09174-SB, 2021 WL 6496718 (C.D. Cal. 2021) ...................................... 12

17

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ....................................................................................... 12, 20

18

*Bettles v. Toyota Motor Corp.*,

19

    No. 2:21-cv-07560-ODW, 2022 WL 1619337 (C.D. Cal. May 23, 2022) .......................... 22

20

*Brazil v. Dole Packaged Foods, LLC*,

21

    660 F. App'x 531 (9th Cir. 2016) ........................................................................ 17

22

*Daimler AG v. Bauman*,

    571 U.S. 117 (2014) ........................................................................................... 11

23

*Daniels–Hall v. Nat'l Educ. Assoc.*,

24

    629 F.3d 992 (9th Cir. 2010) .............................................................................. 12

25

*Daugherty v. Am. Honda Motor Co., Inc.*,

    144 Cal. App. 4th 824 (2006) ............................................................................. 18

26

*Davidson v. Kimberly-Clark Corp.*,

27

    889 F.3d 956 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018) ......................... 23

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Drake v. Haier US Appliance Corp.*,
   No. 23-cv-00939-AMO, 2024 WL 590597 (N. D. Cal. Feb. 13, 2024)……………...……14

5

*In re Ford Tailgate Litig.*,
   No. 11-cv-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ..................................... 22

6

7

*Fox v. Ethicon Endo-Surgery, Inc.*
   35 Cal. 4th 797, 807 (2005) ............................................................................................... 24

8

9

*Gauvin v. Trombatore*,
   682 F.Supp. 1067 (N.D. Cal. 1988) .................................................................................... 13

10

*Gen–Probe, Inc. v. Amoco Corp., Inc.*,
   926 F. Supp. 948 (S.D. Cal. 1996) ...................................................................................... 13

11

12

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV 20-00769-CJC-GJSX, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ....................... 23

13

14

*Golden State Water Co. v. 3M*,
   No. 2:20-cv-08897-SVW-AS, 2021 WL 221787 (C.D. Cal. Jan. 20, 2021) .......................... 7

15

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ............................................................................................. 8

16

17

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) ....................................................................................................... 21

18

19

*Hedrick v. BSH Home Appliance Corp.*,
   No. 8:23-cv-00358, 2024 WL 2190984 (C.D. Cal. May 14, 2024) ....................................... 20

20

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ......................................................................................... 14, 18

21

22

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ............................................................................................. 11

23

24

*In re iPhone Application Litig.*,
   No. 11–MD–02250–LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................... 13

25

*Johnson v. Glock, Inc.*,
   No. 3:20- CV-08807-WHO, 2021 WL 428635 (N.D. Cal. Feb. 8, 2021) ............................. 23

26

*Johnson v. Glock, Inc.*,
   No. 3:20-CV-08807-WHO, 2021 WL 1966692 (N.D. Cal. May 17, 2021) ........................... 25

27

28

1
2

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

3
4

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)............................................................................. 13

5

*King v. County of Los Angeles*,
   885 F.3d 548 (9th Cir. 2018)............................................................................... 12

6
7

*Kulp v. Munchkin, Inc.*,
   678 F. Supp. 3d 1158 (C.D. Cal. 2023)............................................................... 20

8
9

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) (UCL)............................................................................. 17

10

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001)............................................................................... 15

11
12

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997)............................................................................... 18

13
14

*In re MacBook Keyboard Litig.*,
   No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .............................. 23

15

*Madrigal v. Hint, Inc.*,
   No. CV 17-02095-VAP, 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ................................ 23

16
17

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
   48 F. Supp. 3d 1362 (C.D. Cal. 2014).................................................................. 12

18
19

*MSP Recovery Claims, Series LLC v. Actelion Pharms. US, Inc.*,
   No. 3:22-CV-07604-JSC, 2024 WL 3408221 (N.D. Cal. July 12, 2024)....................... 7, 8, 9

20

*Neubronner on Behalf of Mercatura Tr. v. Young*,
   No. 95-55682, 1997 WL 168345 (9th Cir. 1997) (unpublished table decision) .................... 20

21
22

*Pebble Beach Co. v. Caddy*,
   453 F.3d 1151 (9th Cir. 2006).............................................................................. 7

23
24

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015).......................................................................... 8, 9, 10

25

*Reynolds v. Binance Holdings Ltd.*,
   481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................................... 7, 8, 9

26
27

*Rodarte v. Philip Morris, Inc.*,
   No. CV03-0353FMC(CTX), 2003 WL 23341208 (C.D. Cal. June 23, 2003)....................... 24

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Romero v. HP, Inc.*,
   No. 16-cv-5415, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017)................................. 23

4

5

*Royal Thrift & Loan Co. v. Cnty. Escrow, Inc.*,
   123 Cal. App. 4th 24 (2004)................................................................................. 25

6

*SBC v. Berlin 2012-2014, Ltd. v. Babywatch, Inc.*,
   No. 18-cv-07611-EDL, 2019 WL 13203776 (N.D. Cal. Oct. 10, 2019) ............... 19

7

8

*Seldin v. HSN, Inc.*,
   No. 17-cv-2183-AJB-MDD, 2018 WL 3570308 (S.D. Cal. July 25, 2018) .............. 13, 14, 18

9

*Shaeffer v. Califia Farms*,
   LLC, 44 Cal. App. 5th 1125 (2020) ..................................................................... 17

10

11

*Sharma v. Volkswagen AG*,
   No. 20-cv-02394-JST, 2021 WL 912271 (N.D. Cal. Mar. 9, 2021) ....................... 23

12

13

*Shelton v. Ocwen Loan Servicing, LLC*,
   No. 18-cv-02467-AJB-WVG, 2019 WL 4747669 (S.D. Cal. Sept. 30, 2019) ....................... 20

14

*In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*,
   No. 4:22-md-03047-YGR, 2024 WL 1786290 (N.D. Cal. Apr. 15, 2024)............................ 13

15

16

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)................................................................................. 22, 23

17

18

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)................................................................................. 16

19

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)................................................................................. 12

20

21

*Stewart v. Electrolux Home Prods. Inc.*,
   304 F. Supp. 3d 894 (E.D. Cal. 2018)................................................................... 16

22

23

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995)................................................................................. 24

24

*United States v. Wholesale Fireworks Corp.*,
   No. 5:23-CV-01805-MEMF-SP, 2024 WL 4343192 (C.D. Cal. Sept. 27, 2024) ................. 11

25

26

*Villalpando v. Exel Direct Inc.*,
   No. 12–CV–04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014)................................ 13

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3
4
*Williams v. Apple, Inc.*,
   No. 19-cv-04700-LHK, 2020 WL 1492718 (N.D. Cal. Mar. 27, 2020) ................................. 23

5
*Williams v. Yamaha Motor Corp., U.S.A.*,
   No., CV 13-05066 BRO, 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) ............................... 24

6

**Statutes**

7

21 U.S.C. §§ 811(a), 812(b) .................................................................................................. 6

8
9
Cal. Bus. & Prof. Code § 17208 ......................................................................................... 24

10
Cal. Bus. & Prof. Code § 17500 ......................................................................................... 20

11
Cal. Civ. Proc. Code. § 1783 .............................................................................................. 24

12
Cal. Civ. Proc. Code § 339(1) ............................................................................................ 25

13
Cal. Com. Code § 2314(1) .................................................................................................. 21

14
Cal. Com. Code. § 2725(1) ................................................................................................. 24

15
CLRA ............................................................................................................................ *passim*

16
Code of Civil Procedure § 338(a) ....................................................................................... 24

17
False Advertising Law ..................................................................................... 5, 20, 24, 25

18
Unfair Competition Law .............................................................................................. *passim*

19

**Other Authorities**

20
Fed. R. Evid. 201 ............................................................................................................... 15

21
Federal Rule of Civil Procedure 8 ............................................................................... 13, 14

22
Federal Rule of Civil Procedure 8(a) ................................................................................. 22

23
Fedreal Rule of Civil Procedure 8(a)(2) ............................................................................ 13

24
Federal Rule of Civil Procedure Rule 9(b) .............................................................. 13, 14, 16

25
Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 15

26
27
28

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on March 6, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Araceli Martinez-Olguin, in Courtroom 10, 19th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants, will, and hereby do, move the Court for an order dismissing the First Amended Complaint in the above-captioned litigation on the following grounds:   (1) this Court lacks personal jurisdiction over the Defendants such that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2); and (2) Plaintiffs have failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, and all other papers and arguments submitted in this matter.

**STATEMENT OF REQUESTED RELIEF**

Defendants seek dismissal of the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and/or 12(b)(6).   Because another amendment is futile, Defendants seek dismissal with prejudice.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have pleaded facts sufficient to establish personal jurisdiction over Defendants;

2.      Whether Plaintiffs have alleged facts sufficient to state any of their alleged claims for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

This Court previously dismissed Plaintiffs' original Complaint because they failed to allege facts sufficient to establish personal jurisdiction over the named defendant.  Plaintiffs now attempt to cure that deficiency by adding several defendants and conclusory alter ego allegations. Dkt. 39 at 4–5.  Plaintiffs' attempt fails, however, because there can be no personal jurisdiction on an alter ego theory where, as here, Plaintiffs fail to allege facts sufficient to establish either general

1    or specific jurisdiction over any single defendant.

2        General jurisdiction exists where the defendants are "at home."   Absent exceptional

3    circumstances (none of which are alleged here), a defendant is "at home" where it is domiciled,

4    i.e., where it is incorporated or has its principal place of business.  Plaintiffs do not allege that any

5    defendant is incorporated in or has its principal place of business in California.

6         Plaintiffs similarly fail to allege facts sufficient to support specific jurisdiction.   They

7    allege only that Defendants knew that their products would wind up in California.  But the Ninth

8    Circuit has held that such knowledge alone is insufficient to establish specific jurisdiction.

9    Specific jurisdiction instead requires a defendant to "purposely avail" itself of the "privilege of

10   conducting activities in California."   The First Amended Complaint is devoid of any such

11   allegations.  As such, it must be dismissed again.

12       More, Plaintiffs fail to allege facts supporting the elements of any claim.  Plaintiffs allege

13   that the injury that they have suffered is that they are addicted to kratom, and had they known that

14   this would occur, they would not have bought it.  So, they claim the purchase price they paid for

15   Defendants' product.   Plaintiffs seek to recover strictly economic loss, namely, the loss to

16   Plaintiffs for the cost of kratom or Defendants' unjust enrichment from selling kratom to

17   Plaintiffs.

18       Moreover, Plaintiffs' consumer protection and misrepresentation claims all are premised

19   on an alleged fraudulent omission: that their kratom products had addictive qualities comparable

20   to opioids.  Plaintiffs use their own term for this, "quasi-opiate."  But Plaintiffs must allege facts

21   giving rise to a duty to disclose that information or they fail.  Here, Plaintiffs do not allege that

22   Defendants were aware of such powerful addictive qualities before Plaintiffs purchased their

23   product, nor can they because this premise is simply not plausible.  Federal agencies who regulate

24   food and drugs to this day disclaim any knowledge of significant addictive qualities.  Plaintiffs'

25   suggestion that Defendants had superior knowledge than federal agencies and experts on addiction

26   is too improbable to withstand federal pleading standards.

27       Finally, with respect to M.C., Plaintiffs' First Amended Complaint also fails to state a

28   claim for relief as to her because her claims are barred by the applicable statutes of limitations.

DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:23-CV-06202-AMO                                                          - 2 -

1   **II.     FACTS**

2          **A.     Plaintiffs' alleged Personal Jurisdiction Facts.**

3          Plaintiffs allege the following facts which Defendants dispute but assume are true for

4   purposes of this motion.   Plaintiffs allege that an "OPMS Kratom Enterprise" is led by two

5   individuals, Peyton Palaio and Mark Reilly.   First Amended Complaint ("FAC"), ¶ 2.   They

6   further allege that through Defendant Martian Sales, Inc., Palaio and Reilly use a complex web of

7   shell companies to exploit public ignorance about kratom and obscure the activities of their

8   business.  *Id.* ¶¶ 3, 46.

9          Kratom, imported from Southeast Asia—by entities other than Defendants—enters the

10  United States through California ports and is stored as powder in California warehouses.   *Id.* ¶¶

11  70–72.   Allegedly, Defendants purchase dried, powdered kratom in California from the entities

12  who import it and then transport it from California to Georgia.  *Id.*

13         In Georgia, Defendants mill the kratom into a finer powder.  *Id.* ¶ 80.   Defendants send

14  some to Texas for sterilization, and then the powder returns from Texas to Georgia for packaging

15  into O.P.M.S. Silver products.  *Id.* ¶ 81.

16         Defendants send the portion that does not go to Texas to Colorado.  *Id.* ¶¶ 82–83.

17  Allegedly in Colorado, Defendants further process the powder into "extract powder," which they

18  then return to Georgia for packaging into O.P.M.S. Black and Gold capsules and liquid shots.  *Id.*

19  ¶ 87.   Defendants then ship all these products to Dallas, Texas for "final packaging and

20  distribution."  *Id.*

21         In sum, Defendants purchase bulk kratom in California, process it in Georgia, Texas, and

22  Colorado, and then package it in and distribute it from Texas.  *Id.* ¶¶ 70–87.

23         The only tie to California is the Proposition 65 warnings on O.P.M.S. Extract shots.  *Id.* ¶

24  96.   Allegedly "[b]y placing the Proposition 65 warning on the OPMS Products, Defendants,

25  including Martian Sales Inc., took affirmative steps to avail themselves of the privilege of

26  conducting business in the State of California."  *Id.* ¶ 98.

27         Based on these allegations, Plaintiffs allege personal jurisdiction as follows:

28          Defendants have, at all times relevant hereto, systematically and continually

DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:23-CV-06202-AMO                                                          - 3 -

1
2
3
4

conducted, and continue to conduct, business in this State. Defendants therefore have sufficient minimum contacts with this State, including within this District, and/or intentionally availed themselves of the benefits and privileges of the California consumer market, and directed their activities thereto, through their business activities in furtherance of the OPMS Kratom Enterprise within the State, and through the sale of OPMS kratom to distributors and wholesalers within this District and throughout this State.

5

*Id.* ¶ 22.

6

### B.   Alleged Facts Supporting Plaintiffs' Claims.

7
8

Plaintiffs acknowledge that kratom, derived from the Mitragyna speciosa plant, has been

9

used in Southeast Asian traditional medicine for centuries. *Id.* ¶ 24. But they allege that "kratom

10

is substantially similar to an opioid, and a quasi-opiate." *Id.* ¶ 39. Plaintiffs claim that kratom's

11

primary alkaloids, mitragynine (MG) and 7-hydroxymitragynine (7-MG), interact with various

12

brain receptors, including the "mu-opioid receptor responsible for the addictive properties of

13

opioids." *Id.* ¶¶ 30–31, 39. Plaintiffs allege that the effects of kratom are dose-dependent, ranging

14

from stimulating at low doses to euphoric and sedating at higher doses, resembling opioids. *Id.* ¶¶

15

31–39.

16

Plaintiffs allege that Defendants specialize in the higher doses by selling highly

17

concentrated kratom extracts that are more potent than raw kratom powder. *Id.* ¶¶ 31–39, 86–89.

18

Plaintiffs allege that these extracts make kratom as addictive as opioids. *Id.* ¶¶ 38–43.

19

Specifically, Plaintiffs allege that O.P.M.S. products, particularly the "Black" line of extracts,

20

contain levels of 7-MG that can rival the potency of opioids such as morphine. *Id.* ¶¶ 31–39, 86–

21

89. Plaintiffs further allege that "[t]he symptoms of kratom withdrawal are very similar to those

22

of traditional opiate withdrawal." *Id.* ¶ 43.

23

The allegations of the FAC boil down to a single assertion: that Defendants failed to

24

adequately warn consumers about the addictive potential and withdrawal risks associated with

25

their products. *Id.* ¶¶ 100–39.

26

Plaintiffs allege that the Defendants have deliberately packaged and marketed their

27

products to appear innocuous, using pleasant imagery and minimal warnings on labels. *Id.* ¶¶

28

121–39. Allegedly Defendants' prior website focused on the "all-natural" qualities of kratom and

Defendants' proprietary extraction process, without properly disclosing the risks of addiction and withdrawal.  *Id.* ¶ 128.

Plaintiffs allege that Defendants have taken advantage of their superior knowledge about kratom's pharmacology to mislead consumers.  *Id.* ¶¶ 116–21.  Plaintiffs allege that Defendants have gained extensive knowledge about kratom's effects and addictive potential.  *Id.* ¶¶ 109–15. However, allegedly Defendants failed to share this crucial information with their customers.  *Id.* ¶¶ 116–21.

The FAC alleges that Plaintiffs C.M. and M.C. have become addicted to O.P.M.S. kratom products.  *Id.* ¶¶ 140–45.  Plaintiff M.C. alleges that that she began purchasing O.P.M.S. branded products beginning in October 2018 and discovered she was addicted to kratom about six months later—April 2019.  *Id.* ¶¶ 143–44.  Both Plaintiffs assert that they began using kratom believing it to be a safe, natural alternative to prescription drugs for anxiety and chronic pain, based on enthusiastic statements from friends and family.  *Id.*  They claim that they have developed strong physical dependencies, resulting in them spending hundreds of dollars weekly on kratom extracts, and experiencing intense withdrawal symptoms when attempting to quit.  *Id.*

Plaintiffs allege causes of action under California's consumer protection laws: the Unfair Competition Law ("UCL") (First Count), the Consumers Legal Remedies Act ("CLRA") (Second Count), and the False Advertising Law ("FAL") (Third Count).  They also claim breach of implied warranty (Fourth Count), unjust enrichment (Fifth Count), fraud by omission (Sixth Count), and negligent misrepresentation (Seventh Count).

**C.      Kratom-Related Facts Subject to Judicial Notice.**

Defendants request that the Court take judicial notice of federal regulators' and the World Health Organization' statements and actions regarding kratom and the extent of kratom's known addictive qualities.  *See* Request for Judicial Notice ("RJN") Exs. 1–4.  Defendants do not offer these statements for the truth of the matter asserted, but to establish the addictive qualities of kratom that Defendants were at least constructively aware of during the relevant period. Plaintiffs' allegation that Defendants knew that kratom's addictive qualities are tantamount to those of opioids is inconsistent with publicly available sources.

It is undisputed that kratom products are legal and widely available for purchase.  The National Institute on Drug Abuse ("NIDA")[1]  is studying and funding studies investigating beneficial uses of kratom, including to help treat opioid addiction, and potential adverse effects.  RJN, Ex. 1.  NIDA is one of twenty-seven Institutes and Centers that comprise the National Institutes of Health, which is part of the U.S. Department of Health and Human Services.  *Id.*

In 2018, the Food and Drug Administration ("FDA") specifically decided not to recommend that the Drug Enforcement Administration schedule kratom as a controlled substance.[2]  This decision was based on "many factors, in part on new data, and in part on the relative lack of evidence, combined with an unknown and potentially substantial risk to public health if these chemicals were scheduled at this time."  RJN, Ex. 2.

In December 2021, the Expert Committee on Drug Dependence ("ECDD") at the World Health Organization and the U.S. Commission of Narcotic Drugs, comprised of twelve international experts on substance safety and addiction, unanimously concluded that there was insufficient evidence to recommend a critical international scheduling review of kratom.  "People report using kratom to self-medicate a variety of disorders and conditions, including pain, opioid withdrawal, opioid use disorder, anxiety and depression," ECDD said in its report.  "Kratom is being used as a part of traditional medicine in some countries.  The Committee considered information regarding the traditional use and investigation into possible medical applications of kratom."  RJN, Ex. 3.  "The Committee concluded that there is insufficient evidence to recommend a critical review of kratom."  *Id.*

The FDA has only recently begun to conduct formal scientific studies of kratom.  In January 2024, the FDA posted a new grant opportunity to fund the first clinical trial "to

---

[1] NIDA, founded in 1974, is a federal scientific research institute and the world's largest funder of biomedical research.  *See* Dr. Nora Volkow, 50 years after funding, NIDA urges following science to move beyond stigma, NATIONAL INSTITUTE ON DRUG ABUSE (Feb. 1, 2024), available at https://nida.nih.gov/about-nida/noras-blog/2024/02/50-years-after-founding-nida-urges-following-science-to-move-beyond-stigma.    NIDA supports and conducts a wide range of preclinical, clinical, and population-level research regarding drug use and health.  *Id.* NIDA then disseminates important results of the research it undertakes and supports to the public, health professionals, researchers, and policymakers.  *Id.*

[2] The Controlled Substances Act provides that the "Attorney General may by rule add" to Schedule I any drug if findings are made that "[t]he drug has a **high potential for abuse**," "[t]he drug or other substance has no currently accepted medical use in treatment in the United States," and that "[t]here is a lack of accepted safety for use of the drug or other substance under medical supervision."  21 U.S.C. §§ 811(a), 812(b) (emphasis added).

1    characterize the abuse potential and subjective effects of botanical Kratom."  RJN, Ex. 4.  As of

2    the time of the FAC, FDA has not selected a grant recipient.  *See id.*

3    **III.    ARGUMENT**

4        **A.    Plaintiffs Fail to Allege Personal Jurisdiction Over Any Defendant.**

5            Plaintiffs allege no other facts identified by this Court as necessary to allege personal

6    jurisdiction based on an alter ego theory.    Plaintiffs must at least allege facts showing personal

7    jurisdiction under any theory.    "When a defendant moves to dismiss for lack of personal

8    jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the

9    defendant."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Golden*

10   *State Water Co. v. 3M*, No. 2:20-cv-08897-SVW-AS, 2021 WL 221787, at *2 (C.D. Cal. Jan. 20,

11   2021) ("Defendants argue that Plaintiffs' complaint fails to plead facts sufficient to establish

12   personal jurisdiction.  The Court agrees.").

13           **1.    The Court Allowed Plaintiffs to Amend to Allege an Alter Ego Theory**
14               **of Personal Jurisdiction but They Failed.**

15           When this Court dismissed Plaintiffs' original complaint for lack of personal jurisdiction, it

16   identified alter ego theory as a possible ground for personal jurisdiction were Plaintiffs to allege

17   facts supporting such a theory.  Dkt 39 at 4–5.  To support their alter ego theory, Plaintiffs allege

18   that two individuals run the collective Defendants, but this Court has repeatedly held that such an

19   allegation is not enough to establish alter ego jurisdiction.  *E.g.*, *MSP Recovery Claims, Series*

20   *LLC v. Actelion Pharms. US, Inc.*, No. 3:22-cv-07604-JSC, 2024 WL 3408221, at *3 (N.D. Cal.

21   July 12, 2024) (quoting *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal.

22   2020)) (collecting cases).  Beyond this, Plaintiffs only allege the legal elements of an alter ego

23   claim, FAC ¶ 17, which fails to allege a cause of action.  *Reynolds*, 481 F. Supp. 3d at 1005 ("To

24   sufficiently allege a theory of alter ego, however, a plaintiff must offer more than labels and

25   conclusions—'factual allegations must be enough to raise a right to relief above the speculative

26   level.'" (citations omitted)).

27

28

1

2

    **(a)**  **Plaintiffs Fail to Allege Facts Identified by this Court as Supporting Alter Ego Jurisdiction.**

3

  This Court identified the facts necessary to establish personal jurisdiction on an alter ego

4

theory. *MSP Recovery*, 2024 WL 3408221, at *3. First, "to plead sufficient facts to demonstrate"

5

that one company was "the alter ego of" another "for purposes of personal jurisdiction," Plaintiffs

6

must "plead a 'unity of interest' between [the companies] 'sufficient to satisfy the alter ego test'"

7

as follows: "When considering entities' unity of interest, relevant factors include the

8

commingling of funds and other assets of the entities, the holding out by one entity that it is liable

9

for the debts of the other, identical ownership of the entities, use of the same offices and

10

employees, use of one as a mere shell or conduit for the affairs of the other, inadequate

11

capitalization, disregard of corporate formalities, lack of segregation of corporate records, and

12

identical directors and officers." *Id.* (quoting *Reynolds*, 481 F. Supp. 3d at 1004).

13

  Plaintiffs allege no more than that the Defendants are run by the same individuals.

14

Plaintiffs allege that two individuals, Peyton Palaio and Mark Reilly, lead an "OPMS Kratom

15

Enterprise" comprised of Defendants. FAC ¶¶ 2–3, 46. This is not enough. *See MSP Recovery*,

16

2024 WL 3408221, at *3 ("Express Scripts Holding is run by the same officers as Medco Health

17

Solutions and Express Scripts, Inc . . . that alone is insufficient under the unity of interest test."

18

(internal citation omitted)). "Even if the parent is 'run by the same senior officers and directors'

19

and 'share[s] the same offices' as the subsidiary, 'these facts do not necessarily render' the

20

subsidiary 'the alter ego' of the parent." *Id.* (quoting *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073

21

(9th Cir. 2015) ("Total ownership and shared management personnel are alone insufficient to

22

establish the requisite level of control.").

23

  Plaintiffs plead no other actual allegations supporting the alter ego test and therefore their

24

alter ego theory of personal jurisdiction fails for this reason alone. *MSP Recovery*, 2024 WL

25

3408221, at *3 ("Plaintiffs plead no other factual allegations about the relationship between

26

Express Scripts Holding and its subsidiaries. Because the 'complaint makes almost no factual

27

allegations regarding the nature of the parent-subsidiary relationship,' Plaintiffs have failed to

28

satisfy the alter ego test." (citation omitted)); *Reynolds*, 481 F. Supp. 3d at 1007 (holding no personal jurisdiction under the alter ego test because the plaintiff "leaves multiple factors under the unity of interest prong unaddressed—for example, whether the entities' funds were commingled, whether one held itself out as liable for the debts of the other, whether one was a 'mere shell or conduit for the affairs of the other,' inadequate capitalization, disregard for corporate formalities, and segregation of corporate records." (citation omitted)).

> **(b)** **The Alter Ego Theory Fails Because There is No Personal Jurisdiction Over Any Defendant in California.**

Moreover, given that, as shown below, Plaintiffs have failed to allege that any single defendant has contacts with California sufficient to confer personal jurisdiction, the FAC cannot allege personal jurisdiction through an alter ego theory. *See Ranza*, 793 F.3d at 1071 (holding that alter ego theory may support personal jurisdiction where a parent corporation's forum contacts can be imputed to a subsidiary's or vice versa).

> **2.** **Plaintiffs Fail to Allege That This Court Has Personal Jurisdiction Over Any of the Defendants.**

Plaintiffs confusingly conflate general and personal jurisdiction while failing to allege any facts supporting either. They allege that Defendants "systematically and continually conducted, and continue to conduct, business in this State," FAC ¶ 22, which is outdated general jurisdiction jargon. They also claim, however, that "Defendants therefore have sufficient minimum contacts with this State, including within this District, and/or intentionally availed themselves of the benefits and privileges of the California consumer market, and directed their activities thereto," which is language identifying specific jurisdiction. *Id*. In the end, they try to bootstrap specific jurisdiction onto general jurisdiction because they cannot allege sufficient facts to support either theory.

> **3.** **Plaintiffs assert general jurisdiction but fail to allege even a single fact supporting general jurisdiction.**

An allegation that a defendant's "contacts with a state are 'substantial' or 'continuous and systematic'" "is known as general jurisdiction." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408, 415 (1984)), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).  Where general jurisdiction is established, the defendant "can be haled into court in that state in any action, even if the action is unrelated to those contacts."  *Id.*

Therefore, "[t]he standard for establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be of the sort that approximate physical presence."  *Id.* at 1086 (citation omitted).

The Supreme Court has held that business contacts cannot establish general jurisdiction unless they are "so continuous and systematic as to render the foreign corporation essentially at home in the forum State."  *Ranza*, 793 F.3d at 1069 (citation omitted).  "Factors to be taken into consideration [in determining whether general jurisdiction exists] are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  *Bancroft*, 223 F.3d at 1086. Plaintiffs allege none of these factors.  Defendants have no retail or wholesale outlets in California, no manufacturing facilities, and no physical presence in California at all.  They allege none of the factors required by the case law.  *See id.*

Plaintiffs allege that Defendants do business with California companies, but this does not establish general jurisdiction.  "This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."  *Bancroft*, 223 F.3d at 1086; *see also Ranza*, 793 F.3d at 1070 ("NEON sends employees and products into Oregon and engages in commercial transactions there, but such business activity is not so pervasive as to render it 'essentially at home' in Oregon." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014))); *Daimler*, 571 U.S. at 138–39 (rejecting the proposition that general jurisdiction is appropriate wherever a corporation "engages in a substantial, continuous, and systematic course of business" (citation omitted)); *Daimler*, 571 U.S. at 138–39 nn. 18, 20 (noting that "doing business" has long been abandoned as the test for general jurisdiction (citations omitted)).

Plaintiffs have failed to allege contacts with California sufficient to establish general

1  jurisdiction.

2      **4.**    **Plaintiffs fail to allege specific personal jurisdiction over Defendants.**

3      Plaintiffs have not pled any facts that support specific jurisdiction over any single

4  defendant. "This 'specific' jurisdiction exists if (1) the defendant has performed some act or

5  consummated some transaction within the forum or otherwise purposefully availed himself of the

6  privileges of conducting activities in the forum, (2) the claim arises out of or results from the

7  defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Bancroft*,

8  223 F.3d at 1086. Plaintiffs at most allege that Defendants understood that their product might be

9  sold in California. *See* FAC ¶ 98 ("By placing the Proposition 65 warning on the OPMS Products,

10  Defendants, including Martian Sales Inc., took affirmative steps to avail themselves of the

11  privilege of conducting business in the State of California.")

12      This is not enough to establish specific jurisdiction in California. "The placement of a

13  product into the stream of commerce, without more, is not an act purposefully directed toward a

14  forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

15      "Even a defendant's awareness that the stream of commerce may or will sweep the product

16  into the forum state does not convert the mere act of placing the product into the stream of

17  commerce into an act purposefully directed toward the forum state." *Id*. Rather the "the stream-

18  of-commerce plus theory" that Plaintiffs allege "requires additional conduct directed toward a

19  forum state, which may include 'marketing the product through a distributor who has agreed to

20  serve as a sales agent in the forum State.'" *United States v. Wholesale Fireworks Corp.*, No. 5:23-

21  cv-01805-MEMF-SP, 2024 WL 4343192, at *10 (C.D. Cal. Sept. 27, 2024) (cleaned up).

22      More, at least one federal district court has expressly held that providing Proposition 65

23  warnings with products cannot satisfy specific jurisdiction in California. As the Central District of

24  California has explained, "knowledge of California sales does not satisfy the express aiming

25  requirement, nor does a corresponding effort to comply with California law in view of that

26  knowledge." *BDK USA, Inc. v. FH Grp. Int'l, Inc.*, No. 2:20-cv-09174-SB (JEMx), 2021 WL

27  6496718, at *3 (C.D. Cal. Mar. 10, 2021) (internal citation omitted).

28      Plaintiffs thus fail to allege facts sufficient to establish personal jurisdiction and thus the

Court should dismiss the FAC.

**B.     Even If Jurisdiction Exists, Plaintiffs Have Failed to State Any Claim for Relief.**

Plaintiff must set forth facts sufficient to "state a claim to relief that is plausible on its face," or the Complaint must be dismissed in its entirety.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id*. at 663.  Courts "need not . . . accept as true allegations that contradict matters properly subject to judicial notice."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Here, government public records demonstrate that Plaintiffs' claims are implausible and thus cannot withstand federal pleading standards.  These "records of administrative bodies are appropriate subjects for judicial notice because they constitute matters of public record," including records found in government websites.  *See King v. County of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (courts may "take judicial notice of the undisputed and publicly available information displayed on government websites.").  Similarly, a court can "take judicial notice of a [government's website]."  *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities); *see also United States ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381–82 (C.D. Cal. 2014) (taking judicial notice of documents from the FDA's website).

**1.     Plaintiffs Fail to Allege Plausible Facts to Satisfy Rule 9(b) or Rule 8.**

Federal Rule of Civil Procedure Rule 9(b) requires specific pleading where, as here, the claims sound in fraudulent omission, including Plaintiffs' CLR and UCL claims.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (noting Rule 9(b) applies to CLRA and UCL claims grounded in fraud).  To state a plausible claim based on an omission, Rule 9(b) requires, at a minimum, allegations describing the situation giving rise to a duty to disclose, the events triggering the duty, the content of the omission and where the omitted information should or could

have been revealed.  *In re Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, No. 4:22-md-03047-YGR, 2024 WL 1786290, at *6–8 (N.D. Cal. Apr. 15, 2024) (dismissing omission claims for failure to allege duty specifically); *Seldin v. HSN, Inc.*, No. 17-cv-2183-AJB-MDD, 2018 WL 3570308, at *5–6 (S.D. Cal. July 25, 2018) (holding that claims based on omission must conform to Rule 9(b) and must include the specific content of the purported omission and indicate where the omitted information should have been revealed).  Put differently, a plaintiff pleading a fraudulent omission must set forth more than the neutral facts that identify the transaction at issue.

Moreover, a complaint sounding in fraud that names multiple defendants fails both Rule 8 and Rule 9(b) when it fails to separate the defendants and allege the role each played in causing the alleged harm.  *Gen–Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (A complaint that "lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).") (citing *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)); *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (noting that when complaint lumps multiple defendants together, it is "exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations") (quoting *In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011)).  To survive a pleading challenge to a multi-defendant complaint, therefore, Plaintiffs "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole."  *In re iPhone*, 2011 WL 4403963, at *3.  Stated differently, Plaintiffs' allegations must "provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them," including "what conduct is at issue."  *Villalpando v. Exel Direct Inc.*, Nos. 12–cv–04137 JCS, 13-cv-03091 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014).

Plaintiffs fail in their Rule 8 obligations. They sue eight defendants with a collective nineteen "dba's."  Yet, they make no effort to differentiate between the various defendants or allege who did what and when.  Instead, Plaintiffs lump all defendants together in their seven claims for relief even though, by their own allegations, the various defendants played different roles in the distribution and sale of kratom.  *See* FAC ¶¶ 7–14, 69–95.  Plaintiffs acknowledge that

the various defendants represent manufacturers, processors, wholesalers, retailers, distributors, importers and even farmers. *Id*. Plaintiffs' group pleading therefore falls squarely within the prohibitions of Rule 8 because they have rendered it impossible to discern which, if any, of the defendants allegedly made misrepresentations or omissions or owed Plaintiffs a duty to disclose, the circumstances giving rise to any such duty and how any of the defendants breached that duty. The Complaint as alleged simply lacks the specificity required by Rules 8(2) and 9(b).

>          **(a)**     **The UCL and CLRA Claims Fail Because Plaintiffs Failed to Specifically Allege Materiality, Duty or Reliance.**

An omission claim has five essential elements: "(1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages." *Drake v. Haier US Appliance Corp.*, No. 23-cv-00939-AMO, 2024 WL 590597, at *6 (N.D. Cal. Feb. 13, 2024) (citation omitted), *reconsideration denied*, No. 23-cv-00939-AMO, 2024 WL 2273192 (N.D. Cal. May 20, 2024); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (noting omission claim can be premised on omission that is contrary to an actual representation or an omission of a fact that the defendant had a duty to disclose). The claim fails if even one of these elements is missing. Because Rule 9(b) applies to omission claims, each of these elements must be pleaded with specificity. *See Seldin*, 2018 WL 3570308, at *5–6. Plaintiffs' allegations here do not give rise to even an inference of materiality, duty or reliance.

>          **(i)**     **Plaintiffs' claims that Defendants "knew" kratom had opioid like addictive qualities is implausible.**

Plaintiffs' entire case hinges on whether Defendants "knew" or should have known that kratom had addictive qualities like opioids and failed to provide consumers with information about this. But Plaintiffs' allegations to this effect are not sufficiently plausible to state a claim given properly judicially noticeable materials. While this court is ordinarily restricted to the Complaint on a Rule 12(b)(6) motion, "under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" for the purpose of assessing the "legal sufficiency of a complaint's allegations." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (citation omitted). Here, public records demonstrate that it is not plausible that Defendants knew that kratom was as addictive as

1   an opioid as Plaintiffs purport.  For example, kratom has not been listed as a controlled substance

2   because the DEA (in response to FDA's recommendation) has decided not to list kratom as a

3   Schedule I controlled substance, for which it would be required to find that kratom has "a high

4   potential for abuse" and that there is a "lack of accepted safety of use."  Other agencies such as the

5   WHO have concurred, deciding that there is insufficient evidence to support that kratom is a

6   dangerous, addictive drug.  RJN, Ex. 1–4.  Indeed, federal agencies and the WHO have decided

7   not to not to list kratom as a controlled substance in part because users report positive and

8   healthful effects of using kratom and scientists are continuing to study it.  *Id.*

9   These records combined—while not taken for the truth of the matter asserted—show that

10  Plaintiffs' allegations are not legally sufficient to state a claim.  Plaintiffs' suggestion that

11  Defendants would have known that kratom has significant and serious addictive potential, much

12  less opioid-like addictive potential, when even the world's leading experts on addiction appear to

13  be uncertain about this, is implausible.  To get around this, plaintiffs conclusorily allege that

14  Defendants somehow had superior, inside information that kratom was not just potentially

15  addictive, but as addictive as opioids.  *See* FAC ¶ 135 ("As a kratom product manufacturer and

16  distributor, Defendants occupied a position of superior knowledge to the average reasonable

17  consumer.")  Plaintiffs even go further and allege that "this is not an instance where the science is

18  still up for debate," but that "[i]t has been known for decades . . . that kratom is highly addictive

19  and has the potential to cause physical and psychological dependence in regular users."  *Id.* ¶ 119.

20  But Plaintiffs' allegations about the science are undermined by the public record.  And Plaintiffs'

21  allegations about what Defendants could or should have known when there is otherwise such

22  limited and uncertain information is simply too implausible to withstand federal pleading

23  standards.

24          **(ii)      Plaintiffs Fail to Allege That Any Defendant Had Pre-**
                        **Purchase Knowledge That Kratom Has the Opioid-Like**
25                      **Addictive Qualities.**

26  As Plaintiffs acknowledge in their FAC, an omission is material only if it is likely to

27  influence a reasonable consumer's purchasing decision.  *See* FAC ¶ 215 (alleging "kratom's

28  addictive nature is a material fact that would influence the purchasing decision"); *see id.* ¶ 225

1   (alleging "kratom's addictive mature is a material fact that would influence the purchasing
2   decision of reasonable consumers . . ."); *see also Southland Sod Farms v. Stover Seed Co.*, 108
3   F.3d 1134, 1139 (9th Cir. 1997) (a plaintiff must allege a false statement that was likely to
4   influence the purchasing decision to allege materiality).  It is axiomatic, then, that Plaintiffs must
5   allege how the defendant knew the allegedly omitted information *before* Plaintiffs purchased the
6   product.  *See Drake*, 2024 WL 590597, at *7 ("[A] plaintiff is typically required to allege how the
7   defendant obtained knowledge of the specific defect prior [to] the plaintiff's purchase of the
8   defective product in order to sufficiently allege the manufacturer's awareness of a defect."
9   (citation omitted)).  The allegations of pre-sale knowledge must go to the "specific" issue alleged
10  and must also be sufficiently specific to conform to Rule 9(b).  *Stewart v. Electrolux Home Prods.*
11  *Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018) ("[A] plaintiff is typically required to allege *how*
12  the defendant obtained knowledge of the *specific* defect prior [to] the plaintiff's purchase of the
13  defective product.").

14          Plaintiffs fail to do this.  Plaintiffs make only impermissibly conclusory allegations of
15  Defendants' general knowledge and make no allegations at all of Defendants' pre-purchase
16  knowledge.  Their most specific allegations are in paragraph 214 of the Complaint:

17              Defendants know that kratom is addictive because they interact with kratom
18              vendors, have been made aware of user reports, and have fully characterized
                kratom' alkaloids and created advanced extraction methods.  They further named
19              their kratom 'OPMS' a clear nod to 'opium,' which is an addictive opiate.

20          FAC ¶ 214.  Plaintiffs do not elaborate on these supposed "interactions" with kratom
21  vendors, nor do they explain what information was transmitted between them and the vendors.
22  They do not cite any specific "user reports," discuss the content of any such reports or explain how
23  any of the eight defendants were made aware of them.  Importantly, Plaintiffs also fail to allege
24  when any defendant had any of these supposed interactions or reviewed any "user reports," let
25  alone allege that it was before the Plaintiffs first purchased kratom in 2018 and 2020.  *Id.* ¶¶ 140,
26  143.

27          Plaintiffs reproduce several internet posts from unknown people from a "Reddit kratom
28  forum" at paragraph 53, but these do not constitute allegations of material facts.  Plaintiffs fail to

1   allege that any of these posts are even talking about any of Defendants' products.  Moreover, most

2   of the Reddit posts occurred in 2021 or later and are irrelevant to what Defendants knew at the

3   time the Plaintiffs firs purchased kratom in 2018 and 2020.  *Id.* ¶¶ 140, 143.

4   As this Court has recognized, allegations that the defendant manufacturer had access to

5   information about the defect or was in a "superior position to know the truth about" the product

6   are insufficient.  *Drake*, 2024 WL 590597, at *7 (citation omitted).  Indeed, Plaintiffs' allegations

7   here are no different than the conclusory allegations this Court dismissed in *Drake*.  *See id.*

8   (concluding post-purchase publications discussing industry research and general allegations that

9   defendant should have known that the subject gas stove posed safety risks because it was a large

10  company too conclusory to state a claim).  The result should be no different here.

11          **(iii)   Plaintiffs Fail to Allege Reasonable Reliance in Alleging**
            **That They Relied on Third Parties in Making Their**
12          **Purchasing Decisions.**

13  Plaintiffs must also allege that they reasonably relied on Defendants' statements or

14  omissions in making their purchasing decision.  *See Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310, 325

15  (2011) (UCL); *see also Shaeffer v. Califia Farms*, LLC, 44 Cal. App. 5th 1125, 1143 (2020) (UCL

16  and CLRA); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (same

17  for "unlawful" practice claim grounded in fraud).  Plaintiffs, however, allege expressly that their

18  purchasing decisions were based on representations made not by any defendant, but by *third party*

19  friends and family.

20  Plaintiff C.M. alleges that he "first heard about kratom *through a friend* who did not

21  mention the risk of dependency."  FAC ¶ 140 (emphasis added).  The friend allegedly told

22  Plaintiff that "Defendants' products were 'natural' alternatives to prescription pharmaceuticals."

23  *Id.*  He goes on to allege that when made his first purchase, he "reviewed the OPMS packaging

24  and labels but there were no disclosures . . . that would have corrected his misunderstanding."  *Id.*

25  That misunderstanding, however, stemmed from his friend's representations, not from any

26  statement made by any Defendant.  Indeed, as Plaintiffs acknowledge, the product packaging was

27  silent with respect to addictiveness.

28  Plaintiff M.C. similarly "first learned about kratom *from a relative* who suggested it to her

1    as a safer, all-natural alternative to prescription opioids." *Id.* ¶ 143 (emphasis added). C.M.,

2    therefore, believed that kratom was not addictive not because of anything any defendant said or

3    did, but because of statements made to her by her relative. Thus, the essential element of reliance

4    is missing here. *See Seldin*, 2018 WL 3570308, at *5–6 (dismissing CLRA and UCL claim on

5    similarly vague omission allegations).

6                  **(iv)**      **Plaintiffs Do Not Allege Facts Giving Rise to a Duty to**

7                               **Disclose.**

8          A viable omission is either contrary to a representation actually made or a fact that the

9    defendant had a duty to disclose. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th

10    824, 835 (2006). Plaintiffs do not point to any statement actually made. Therefore, they must

11    allege facts giving rise to a duty to disclose in order to state a claim.

12          Under California law, a duty to disclose arises under four circumstances: (1) when

13    plaintiffs and defendant are in a fiduciary relationship; (2) when the defendant has exclusive

14    knowledge of material facts not known to the plaintiff; (3) when defendant actively conceals a

15    material fact; or (4) when a defendant makes a partial representation but also suppresses some

16    material fact. *Hodsdon,* 891 F.3d at 862; *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

17    Plaintiffs do not allege a fiduciary relationship or a partial representation. The only possibility

18    here then, is exclusive knowledge or active concealment. Plaintiffs adequately allege neither.

19          This Court's opinion in *Drake* is instructive because the nature of the alleged omission

20    there was like the one Plaintiffs attempt to plead here. In *Drake*, the plaintiff purchased a gas

21    stove manufactured by defendant Haier. 2024 WL 590597, at *1. He then sued Haier based on

22    fraudulent omission, alleging that Haier failed to disclose to consumers that gas-fueled stoves,

23    ovens, and ranges are inherently dangerous and thus defective because they emit air pollutants

24    linked to "respiratory illness, cardiovascular problems, cancer, and other health conditions." *Id.*

25    (citation omitted). Like Plaintiffs here, the Haier plaintiff did not seek recovery for personal

26    injuries, but only economic damages representing the price premium he allegedly paid for the

27    stove. *Id.* The Court dismissed the fraud by omission claims, finding that the plaintiff's

28    allegations were insufficient to adequately plead a duty to disclose or justifiable reliance. *Id.* at

1  *6.

2      The result should be the same here.  Plaintiffs seek economic recovery only (*see* FAC ¶

3  163) on the theory that the kratom products are inherently dangerous and therefore defective.  But

4  the FAC is devoid of facts that even suggest that any of the Defendants had the necessary

5  "exclusive knowledge" or actively concealed the effects of kratom.  All that Plaintiffs allege is that

6  the product packaging was *silent* as to the effects of kratom.  *Id.* ¶¶ 121–39. Silence, however, is

7  not "active concealment;" active concealment requires affirmative acts to hide information.  *SBC*

8  *Berlin 2012-2014, Ltd. v. Babywatch, Inc.*, No. 18-cv-07611-EDL, 2019 WL 13203776, at *13

9  (N.D. Cal. Oct. 10, 2019) ("[T]here is a difference between silence . . . and active concealment . . .

10  the latter is marked by an affirmative act to hide information from another party." (alterations in

11  original) (citations omitted)).   Plaintiffs do not allege that any defendant engaged in any

12  affirmative acts of concealment.

13      Nor do Plaintiffs plead "exclusive knowledge."  To the contrary, Plaintiffs' pages of

14  Reddit posts and other allegations establish that that the potential addictiveness of kratom has been

15  widely known for decades.  *See* FAC ¶ 53 (Reddit posts), 118, 119 ("[I]t has been known for

16  decades in the English-speaking world that kratom is highly addictive . . . [and] it has been known

17  for over a century in Southeast Asia that kratom is addictive.").  Plaintiffs' conclusory allegation

18  that "consumers, however, did not have access to this knowledge for years" is contrary to their

19  own allegations.  *Id.* ¶ 120.  Plaintiffs have failed to allege that any of the eight defendants had a

20  duty to disclose and their pleading consequently fails.  *Cf. Twombly*, 550 U.S. at 565–66 (holding

21  that allegations merely consistent with theory of liability are insufficient if those allegations are

22  equally consistent with lawful conduct; allegations must "nudge [] their claims across the line

23  from conceivable to plausible").

24          **(b)      Plaintiffs' FAL and Negligent Misrepresentation Claims Must**
                       **Be Dismissed Because They Cannot Be Premised on an**
25                     **Omission.**

26      The FAL prohibits making or disseminating an untrue or misleading advertising *statement*.

27  Cal. Bus. & Prof. Code § 17500.  Thus, as this Court has recognized, a claim for violation of the

28  FAL cannot be premised on an omission.  *Drake*, 2024 WL 590597, at *7; *Kulp v. Munchkin, Inc.*,

678 F. Supp. 3d 1158, 1170 (C.D. Cal. 2023) (stating "[a] FAL claim is not cognizable when based solely on an omission of material information" (citation omitted)); *Hedrick v. BSH Home Appliance Corp.*, Nos. 8:23-cv-00358 JWH JDE, 2:23-cv-04752-JWH-JDE, 5:23-cv-01496-JWH-JDE, 2024 WL 2190984, at *13 (C.D. Cal. May 14, 2024) (noting "[t]here can be no FAL claim where there is no statement at all" (alteration in original) (citations omitted)).

Plaintiffs know this, which is why they try to couch their FAL claim as one sounding in misrepresentation.  *E.g.*, FAC ¶ 181 ("Defendants misrepresented that kratom is not addictive"); *Id.* ¶ 183 ("defendants continue to represent that kratom is not addictive").  But nowhere in the 229 paragraphs and forty-seven pages of the FAC do Plaintiffs identify a single affirmative representation made by any of the eight defendants stating that kratom is not addictive.  Rather, Plaintiffs' complaint is premised solely on Defendants' alleged failure to disclose that kratom is addictive.  *Id.* ¶¶ 100–39.  Accordingly, negligent misrepresentation claim fails for this reason alone.

Negligent misrepresentation cannot be premised on an omission either.  *Am. Student Fin. Grp. v. Aequitas Cap. Mgmt., Inc.*, No. 12-cv-2446-CAB (JMA), 2014 WL 12165417, at *3 (S.D. Cal. Nov. 3, 2014) ("Under California law, [a] negligent misrepresentation claim requires a positive assertion, not merely an omission." (alteration in original) (citation omitted)); *Shelton v. Ocwen Loan Servicing, LLC*, No. 18-cv-02467-AJB-WVG, 2019 WL 4747669, at *9 (S.D. Cal. Sept. 30, 2019); *see also Neubronner ex rel. Mercatura Tr. v. Young*, 111 F.3d 138, at *3 (9th Cir. 1997) ("California law requires that plaintiffs allege positive assertions and not merely implied representations to support a claim of negligent misrepresentation.") (unpublished table decision).

Plaintiffs' negligent misrepresentation claim is premised exclusively on alleged omissions and withheld information.  *See, e.g.*, FAC ¶ 213 (alleging Defendants "misrepresented that its kratom Products have attributes or qualities that they do not have *by failing to disclose* that kratom is addictive and can cause opioid-like withdrawal." (emphasis added)); *see also id.* ¶ 228 ("Consumers reasonably and justifiably relied on Defendant's *omission*." (emphasis added)); *id.* ¶ 229 ("As a result of Defendant's *omission* . . . ." (emphasis added)).  The negligent misrepresentation claim thus must also be dismissed.

1

### (c)     Plaintiffs' Implied Warranty Claims Fail

2           Plaintiffs' attempt to plead a breach of the implied warranty of merchantability fails

3    because they do not allege that the kratom products are unfit for their ordinary and intended

4    purpose.   The implied warranty of merchantability is a statutory warranty.   Cal. Com. Code

5    § 2314(1).   Unlike express warranties, "liability for an implied warranty does not depend upon any

6    specific conduct or promise on [the defendant's] part, but instead turns upon whether the[ ] product

7    is merchantable under the code." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975).   The Commercial

8    Code does not "impose a general requirement that goods precisely fulfill the expectation of the

9    buyer.   Instead, it provides for a minimum level of quality." *Id.*   A plaintiff who claims a breach

10   of the implied warranty of merchantability must therefore show that the product "did not possess

11   even the most basic degree of fitness for ordinary use*." Mocek v. Alfa Leisure, Inc.*, 114 Cal. App.

12   4th 402, 406 (2003).

13          Plaintiffs fail to state a claim for breach of the implied warranty of merchantability and

14   *Drake* again illustrates why.   In *Drake*, the Court found that the claim there was adequately

15   pleaded because Plaintiff alleged that stove as manufactured was unfit for ordinary use due to the

16   safety defect—every stove as sold emitted the alleged carcinogens.   2024 WL 590597, at *7.   In

17   other words, the consumer could not avoid the inherent danger even when the stove was used as

18   intended.   *Id.* at *8 ("[A] product that poses a material safety hazard when used as intended is

19   unmerchantable.").

20          The alleged defect here, however, is materially different—the alleged "defect" is addictive

21   qualities like opioids.   As shown above, governments and WHO have decided not to list kratom as

22   a controlled substance because there is no evidence that kratom acts like an opioid.   Plaintiffs'

23   allegation that kratom is like an opioid therefore does not pass the Supreme Court's plausibility

24   standard.   Thus, their claim fails.

25           **2.      Unjust enrichment is a remedy, not a claim for relief and therefore falls
                       with the other claims for relief.**

26

27          Plaintiffs' unjust enrichment claim fails for all the reasons stated above—they are not

28   entitled to any unjust enrichment remedy if Defendants did nothing wrong.   And they fail to allege

DEFENDANTS' MOTION TO DISMISS
CASE NO.: 3:23-CV-06202-AMO                                                                      - 21 -

that Defendants did anything wrong.  Although Rule 8(a) allows Plaintiffs to plead alternative claims, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action."  *Bettles v. Toyota Motor Corp.*, No. 2:21-cv-07560-ODW (AFMx), 2022 WL 1619337, at *3 (C.D. Cal. May 23, 2022) (quoting *In re Ford Tailgate Litig.*, No. 11-cv-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *corrected on denial of reconsideration*, No. 11-cv-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014)).  But "[s]hould plaintiffs ultimately be unable to recover under either a contract or tort theory, it does not mean a legal remedy was unavailable (thereby justifying an equitable remedy of unjust enrichment), but only that their claim lacks merit." *Id.* (citation omitted).

The unjust enrichment claim should therefore be dismissed for the same reasons that the Court should dismiss the legal claims.

### 3.    Plaintiffs Have No Standing to Seek Injunctive Relief.

Plaintiffs' request for injunctive relief fails.  First, Plaintiffs have adequate legal remedies and state laws to the contrary have no application in federal court.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841–44 (9th Cir. 2020) (injunctive relief appropriate where there exists no adequate remedy at law).  The question is not whether Plaintiffs are likely to succeed on their legal claims but whether, assuming Plaintiffs *did* prevail, the legal remedy would be adequate.  *See Madrigal v. Hint, Inc.*, No. CV 17-02095-VAP (JCx), 2017 WL 6940534, at *4 (C.D. Cal. Dec. 14, 2017) (holding that if plaintiffs ultimately could not recover, that would not necessarily mean a legal remedy was inadequate, "only that their claim lacks merit" (citation omitted)).

"There is nothing [in the complaint] to suggest that monetary damages would not make Plaintiffs or the putative class whole."  *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV 20-00769-CJC (GJSx), 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020); *see also Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) (dismissing UCL and unjust-enrichment claims based on alleged automotive defect resulting in a loss of money or value; reasoning that "this is exactly the type of injury for which legal remedies are appropriate"); *In re*

1  *MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *1, *4 (N.D. Cal. Oct.

2  13, 2020) (applying *Sonner* to dismiss UCL claim and CLRA claim to the extent it sought

3  equitable relief).

4  Plaintiffs' claims for prospective injunctive relief also fail because they do not allege facts

5  showing that they are likely to be harmed in the future. *See Davidson v. Kimberly-Clark Corp.*,

6  889 F.3d 956, 966 (9th Cir. 2018) (allegations of possible injury are insufficient), *cert. denied*, 139

7  S. Ct. 640 (2018); *Sharma*, 524 F. Supp. at 908–09. Indeed, to the extent Plaintiffs allege they

8  were deceived in the past about O.P.M.S. products, any harm suffered because of that alleged

9  deception would not justify prospective injunctive relief. *See Johnson v. Glock, Inc.*, No. 3:20-

10  cv-08807-WHO, 2021 WL 428635, at *6–7 (N.D. Cal. Feb. 8, 2021) (dismissing UCL injunctive

11  relief claim for this reason); *see also Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906–07 (N.D.

12  Cal. 2020) (same). And, in a consumer products case, a plaintiff must allege that she intends to

13  purchase the products at issue in the future to have standing to seek injunctive relief. *See*

14  *Davidson*, 889 F.3d at 970–71. Absent affirmative allegations of an intention to purchase the

15  product in the future, knowledge of an alleged falsehood eliminates Article III standing for

16  injunctive relief. *See Romero v. HP, Inc.*, No. 16-cv-5415, 2017 WL 386237, at *9 (N.D. Cal. Jan.

17  27, 2017). As Plaintiffs' FAC contains no allegation suggesting future purchase of O.P.M.S.

18  products, *see e.g.*, FAC ¶¶ 140–45, the request for injunctive relief must be dismissed.

19  **4.** **All of Plaintiff M.C.'s Claims are Barred by the Statute of Limitations.**

20  "A motion to dismiss based on the running of the statute of limitations period may be

21  granted . . . if the assertions of the complaint, read with the required liberality, would not permit

22  the plaintiff to prove that the statute was tolled." *Supermail Cargo, Inc. v. United States*, 68 F.3d

23  1204, 1206–07 (9th Cir. 1995) (citation omitted). The longest applicable statute of limitations

24  here is four years. Plaintiff M.C., however, filed her complaint more than four years after she

25  knew she was addicted to kratom. Accordingly, all her claims are all time-barred.

26  **(a)** **The UCL and Breach of Warranty Claims Are Barred by a Four-Year Statute of Limitations.**

27

28  Claims for violation of the UCL and breach of implied warranty claims are governed by a

four-year statute of limitations.   Cal. Bus. & Prof. Code § 17208 (UCL); Cal. Com. Code § 2725(1).   The discovery rule, which tolls the statute of limitations "until the plaintiff discovers, or has reason to discovery, the cause of action," can apply to the UCL.   *Fox v. Ethicon Endo-Surgery, Inc.* 35 Cal. 4th 797, 807 (2005) (explaining application of discovery rule).   It does, however, not apply to implied warranty claims.   *Williams v. Yamaha Motor Corp., U.S.A.*, No., CV 13-05066 BRO (VBKx), 2015 WL 13626022, at *4 (C.D. Cal. Jan. 7, 2015) (stating that "there is no 'discovery rule'" for implied warranty claims (citation omitted)).

Plaintiff M.C. alleges she began purchasing O.P.M.S. branded products beginning in October 2018 and discovered she was addicted to kratom about six months later—April 2019. FAC ¶¶ 143, 144.   She filed her complaint on November 19, 2023.   Dkt. 1.   Plaintiff M.C.'s Breach of Implied Warranty claim was time-barred four years after her first purchase, or October 2022, more than a year before she filed her complaint.   Even assuming the discovery rule applies to her UCL claim, Plaintiff M.C.'s UCL claim was time-barred as of approximately April 2023, at least six months before Plaintiff M.C. filed her complaint.

### (b)   The CLRA, FAL and Fraudulent Omission Claims are Barred by a Three-Year Statute of Limitations.

Plaintiff M.C.'s claims for violations of the CLRA and FAL and her fraudulent omission claims are similarly time-barred.   These claims are subject to a three-year statute of limitations. Cal. Civ. Code § 1783 (CLRA); *Rodarte v. Philip Morris, Inc.*, No. CV03-0353FMC(CTX), 2003 WL 23341208, at *2 (C.D. Cal. June 23, 2003) (holding three-year statute of Code of Civil Procedure § 338(a) applies to FAL claims); *Johnson v. Glock, Inc.*, No. 3:20-cv-08807-WHO, 2021 WL 1966692, at *3 (N.D. Cal. May 17, 2021) (noting fraudulent omission subject to three year statute).   Even assuming the discovery rule applies to all of them, the statute ran on Plaintiff M.C.'s CLRA, FAL and fraudulent omission in approximately April 2022, more than a year before she filed her complaint.

### (c)   The Unjust Enrichment and Negligent Misrepresentations Claims are Barred by a Two-Year Statute of Limitations.

Claims for unjust enrichment and negligent misrepresentation are subject to a two-year statute of limitations.   See Cal. Civ. Proc. Code § 339(1) ("Within two years: 1. An action upon a

1   contract, obligation or liability…shall not be deemed to have accrued until the discovery of the

2   loss or damage suffered by the aggrieved party . . ."); *Royal Thrift & Loan Co. v. Cnty. Escrow,*

3   *Inc.*, 123 Cal. App. 4th 24, 44 (2004) (negligent misrepresentation).  The discovery rule does not

4   apply to negligent misrepresentation.  *Royal Thrift*, 123 Cal. App. 4th at 43 (noting statute of

5   limitations triggered on the date of the injury, and a plaintiff's ignorance of the injury does not toll

6   the statute).  Accordingly, Plaintiff M.C.'s unjust enrichment claim was time-barred as of April

7   2021 (assuming the discovery rule applies), and her negligent misrepresentation claim was time-

8   barred as of October 2020, both well before she filed her complaint in November 2023.

9   **IV.   CONCLUSION**

10          For the foregoing reasons, the Court should dismiss the Plaintiffs' First Amended

11   Complaint.

12   DATED:  October 25, 2024          Respectfully submitted,

13                                     KILPATRICK TOWNSEND & STOCKTON LLP

14
                                       By:  */s/ Gwendolyn C. Payton*
15                                         GWENDOLYN PAYTON
                                           MICHELE FLOYD
16
                                       Attorneys for Defendants
17                                     MARTIAN SALES, INC., PEYTON SHEA PALAIO,
                                       JOPEN LLC, LGI HOLDINGS, LLC, LP IND., LLC,
18                                     CAG HOLDINGS CO, LLC, CALIBRE
                                       MANUFACTURING, LLC, AND NUZA, LLC
19

20

21

22

23

24

25

26

27

28