UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C.M., et al.,

　　　　　Plaintiffs,

　　v.

MARTIAN SALES, INC., et al.,

　　　　　Defendants.

Case No.  23-cv-06202-AMO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 94

This is a putative false-advertising class action about the sale of kratom, a drug product. Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim.  The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for May 7, 2026, is **VACATED**.  *See* Civil L.R. 7-6; Fed. R. Civ. P. 78(b).  Having read the parties' papers and carefully considered the arguments therein, as well as the relevant legal authority, the Court hereby **DENIES** the motion to dismiss for lack of personal jurisdiction, and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss for failure to state a claim.

## I.　BACKGROUND

This section comprises the well-pleaded allegations from the operative Second Amended Complaint, which are taken as true and viewed in the light most favorable to Plaintiffs.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).[1]

Kratom is a substance derived from the kratom plant, *mitragyna speciosa*, indigenous to Southeast Asia.  Dkt. No. 90 ("SAC") ¶ 25.  It has historically been used in herbal medicine and remains popular to this day.  *Id.*  The leaves of the plant are harvested, dried, and crushed into a

---

[1] The parties' unopposed requests for judicial notice are **GRANTED**.

United States District Court
Northern District of California

fine powder, which is then packaged into pouches or capsules and sold by manufacturers. *Id.* ¶ 27. The finished products are sold through the internet as well as in corner stores, smoke shops, and gas stations. *Id.* ¶ 29. When ingested, two compounds (mitragynine and 7-hydroxymitragynine) cause a psychoactive effect "substantially similar to opiate-based painkillers" in certain doses. *Id.* ¶¶ 30-32. Those compounds interact with opioid receptors in the brain, and all substances that interact with such receptors carry a high risk of addiction. *Id.* ¶¶ 35-38, 41. Thus, kratom is considered a quasi-opiate since it is akin to an opioid. *Id.* ¶¶ 39-40. Users of kratom have become addicted, and have reported experiencing depression, anxiety, inability to experience joy or pleasure, and reduced sex drive. *Id.* ¶¶ 44-46.

As of 2021, kratom is estimated to be a $1.3 billion industry in the United States with 11 to 15 million annual users. *Id.* ¶ 47. Manufacturers do not disclose kratom's potential to be addictive. *Id.* ¶¶ 52-53. Instead, it is marketed as a safe substitute for painkillers and coffee; a treatment for opioid withdrawal, anxiety, and depression; and a way to increase focus and energy. *Id.* ¶ 51. As a result, many users become addicted unexpectedly. *Id.* ¶ 54.

Defendants are seven businesses (Martian Sales, Inc.; Jopen LLC; LGI Holdings, LLC; LP Ind., LLC; CAG Holdings CO, LLC; Calibre Manufacturing, LLC; and Nuza, LLC) and one natural person, Peyton Shea Palaio. *Id.* ¶¶ 8-15. The corporate Defendants sell kratom under the brand name "O.P.M.S.," short for "Optimized Plant Mediated Solutions." *Id.* ¶ 120. Palaio is the apparent head of the OPMS enterprise, though he is not mentioned in any corporate filings. *Id.* ¶ 9. The Defendants are together "involved in every step of the OPMS kratom supply chain, from import to distribution." *Id.* ¶ 97.

Plaintiffs C.M. and M.C. purchased OPMS kratom capsules believing that they were safe treatments for anxiety and chronic pain. *Id.* ¶¶ 160, 163. They became addicted, spending hundreds of dollars every week buying OPMS products. *Id.* ¶¶ 161, 164. Despite seeking medical assistance, C.M. has been unable to overcome his addiction to OPMS products six years after his first purchase. *Id.* ¶¶ 160, 162. M.C. overcame her nearly three-year addiction in October 2021 after being placed on a long-term suboxone regimen, which is generally used to treat narcotics addictions. *Id.* ¶¶ 164-65. Plaintiffs assert seven claims against Defendants: (1) violation of the

California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (4) breach of implied warranty; (5) unjust enrichment; (6) fraud by omission; and (7) negligent misrepresentation.

## II.    DISCUSSION

### A.    Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). But absent an evidentiary hearing, a plaintiff "need only make a prima facie showing of jurisdictional facts." *Id.* (citation omitted). A plaintiff's undisputed allegations must be taken as true. *Id.* (citation omitted). As discussed below, Plaintiffs have made a prima facie showing of personal jurisdiction over all Defendants. The Court begins with Jopen and then turns to the other Defendants.

### 1.    Jopen

There are two types of personal jurisdiction: general and specific. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750 (9th Cir. 2025) (en banc). Plaintiffs do not assert there is general jurisdiction over Jopen, so at issue here is specific jurisdiction. That requires: (1) the defendant to "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; (2) the claim to "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) exercising jurisdiction to "comport with fair play and substantial justice." *Id.* at 750-51 (citation omitted). The dividing line between purposeful direction and purposeful availment is fuzzy, and personal jurisdiction can be established through either concept. *Id.* at 751 n.10 (citation omitted). But in intentional tort cases, the focus is generally on purposeful direction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090-91 (9th Cir. 2023). Purposeful direction requires the defendant to "(1) commit an intentional act, that is (2) expressly

3

aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citation omitted).

Plaintiffs have made a prima facie showing of purposeful direction. First, Jopen intentionally sold OPMS products to retailers in California through its PartyNuts website. *See* SAC ¶¶ 12, 93. Second, those sales were expressly aimed at California. Express aiming can be found from a corporation's delivery of products "into the stream of commerce with the expectation that they will be purchased by consumers in the forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). For instance, corporations expressly aimed their sales at Arizona when selling their products through Amazon in the regular course of business with a nationwide distribution network. *Herbal Brands*, 72 F.4th at 1094. Here, Jopen made tens of thousands of sales totaling millions of dollars over several years to thousands of California retailers. SAC ¶ 93. That volume of sales to in-state retailers can hardly be considered "random, isolated, or fortuitous." *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). OPMS products did not randomly fall into California consumers' hands. Rather, Jopen sold those products to California retailers with the expectation that California consumers would ultimately purchase them. *See Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 159 (9th Cir. 1980) (finding personal jurisdiction over intermediate distributor that knew its products were ultimately destined for Montana). Finally, it is foreseeable that because of these sales, California consumers could suffer harm from OPMS products. *See Herbal Brands*, 72 F.4th at 1091 n.2.

Plaintiffs have also made a prima facie showing of relatedness. While but-for causation is certainly sufficient, "some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). "[A] plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023). Jopen's OPMS product sales to California retailers are the type of contact that would tend to cause physical harm from use of those products. *See Briskin*, 135 F.4th at 760. Indeed, Plaintiffs allege that Jopen is the only master distributor for OPMS products, so the retailers that sold OPMS products to Plaintiffs must have received those products either directly or indirectly from Jopen. *See* SAC ¶ 92. Because

United States District Court
Northern District of California

Plaintiffs' injuries from OPMS products are related to Jopen's contacts, they did not need to directly trace the products back to Jopen's retailer sales.

Once a plaintiff satisfies the first two prongs of the specific jurisdiction test, they have presented a prima facie case, so "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Herbal Brands*, 72 F.4th at 1096 (citation omitted). Defendants make no argument regarding reasonableness. Accordingly, Plaintiffs demonstrate that there is personal jurisdiction over Jopen.

### 2. Alter Ego

Normally, "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). But if a company acts as an alter ego of the other defendants, personal jurisdiction over the company is sufficient to establish personal jurisdiction over the other defendants. *Ranza*, 793 F.3d at 1071. That requires a plaintiff to "make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id.* at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).[2] While the first prong of this test could ostensibly require individual consideration of interest and ownership, it instead holistically considers whether one entity controls another "to such a degree as to render the latter the mere instrumentality of the former." *Id.* (quoting *Unocal*, 248 F.3d at 926); *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073 (citation omitted).

Plaintiffs contend that Jopen and the other Defendants are alter egos, so personal jurisdiction over Jopen should also provide personal jurisdiction over the remaining Defendants.[3]

---

[2] It is not obvious whether this test is a matter of federal common law or of state law. The latter seems to be the case. *See, e.g.*, *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) (citing California law); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989) (citing Arizona law). In any event, both parties rely on California law, so the Court applies California law to this inquiry.

[3] While alter-ego liability is generally "reserved for the parent-subsidiary relationship," it can also be applied "between sister companies" or to "individual stockholders." *Las Palmas Assocs. v. Las*

5

To start, Plaintiffs allege that Mark Jennings is CEO of most of the corporate Defendants. SAC ¶ 110. Jennings reports to Palaio, who is not listed on any filings but holds himself out to be the head of two corporate Defendants and the OPMS enterprise. *Id.* ¶¶ 9-11, 118. Calibre was spun off from a corporation registered with one of Palaio's relatives as an officer. *Id.* at 94.[4] Most of the corporate Defendants share addresses. *Id.* ¶¶ 8, 10-12, 14-15, 117. They operate under numerous fictitious names. *Id.* ¶¶ 11, 78, 114. Additionally, they commingle assets. For instance, Jopen paid for Martian Sales' costs of business between 2012 and 2020 without ever being repaid or entering formal loan arrangements. *Id.* ¶¶ 105-06. Martian Sales remains wholly compensated by Jopen. *Id.* ¶ 107. That relationship has been reduced to writing, but the basis for and timing of compensation is mysterious to Martian Sales. *Id.* ¶¶ 106-07. Its president testified that it is paid by Jopen "pretty much once a year or however they feel like paying me, I guess." *Id.* ¶ 107. Jopen pays Martian Sales' manufacturing costs and even donations to the American Kratom Association. *Id.* ¶¶ 108-09. Jopen similarly uses the other corporate Defendants as conduits for its own activities. For instance, a company named Alphabet Wholesale ordered kratom for delivery in Texas. *Id.* ¶¶ 75-76. However, Alphabet Wholesale was a fictitious name for LGI, the order was ultimately destined for Georgia, and Jopen paid the invoice. *Id.* Finally, none of the corporate Defendants have insurance for claims asserted by consumers. *Id.* ¶ 112.

Those allegations sufficiently make a prima facie case that Jopen and the other Defendants have a unity of interest and ownership. A litany of factors is relevant to this determination, including "(1) inadequate capitalization, (2) commingling of funds and other assets, [and] (3) disregard of corporate formalities and failure to maintain an arm's length relationship." *Purdue Pharma*, 491 F. Supp. 3d at 635 (citation omitted); *see also Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 512-13 (2010) (citation omitted). Significantly, "inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary" under California law. *Unocal*, 248 F.3d at 927 (quoting *Slottow v. Am. Cas. Co. of*

---

*Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991). As they have not suggested otherwise, the Court assumes that the non-Jopen Defendants all have one of those relationships with Jopen.

[4] All citations to page numbers in filings on the docket refer to ECF pagination.

*Reading, Pa.*, 10 F.3d 1355, 1360 (9th Cir. 1993)). By lacking insurance and relying on Jopen to pay operating expenses, it is plausible that the other corporate Defendants are undercapitalized. *See Las Palmas*, 235 Cal. App. 3d at 1250 (finding undercapitalization where one defendant's "survivability as a developer was intertwined with its dependence on" the other); *Healy v. Coachella Mgmt. Partners, LLC*, No. B330394, 2025 WL 2218201, at *9 (Cal. Ct. App. Aug. 5, 2025) (considering lack of insurance as evidence of undercapitalization). Additionally, the overlap in officers and offices between all corporate Defendants and the comingling of assets between Jopen and the other corporate Defendants is suggestive of a unity of interest and ownership. *See Purdue Pharma*, 491 F. Supp. 3d at 636-37. These circumstances go beyond those "typical of the parent-subsidiary relationship" and instead suggest the corporate form is being abused. *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK, 2015 WL 400251, at *6 (N.D. Cal. Jan. 29, 2015).

Finally, Plaintiffs make a prima facie case that failure to disregard the Defendants' separate identities would result in fraud or injustice. This prong is satisfied by allegations of undercapitalization. *See Purdue Pharma*, 491 F. Supp. 3d at 638; *Unocal*, 248 F.3d at 927. As previously discussed, Plaintiffs make a prima facie showing of undercapitalization here.

To be sure, a different court dismissed a similar set of OPMS defendants for failing to make a prima facie case of personal jurisdiction based on an alter-ego theory. *Moller v. Martian Sales, Inc.*, No. 24-CV-228, 2026 WL 863787, at *1 (E.D. La. Mar. 30, 2026). But that court applied Wyoming law and considered a more voluminous record. *Id.* at *9, *34. Moreover, two state courts appear to have initially allowed personal jurisdiction on an alter-ego theory for some Defendants. *See id.* at *4. It may well be that Plaintiffs are unable to establish personal jurisdiction at later stages of this case. For now, their uncontested allegations control and make a prima facie showing that Jopen and the other Defendants are alter egos.

### B. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual

United States District Court
Northern District of California

United States District Court
Northern District of California

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must assume that the plaintiff's allegations are true and draw all reasonable inferences in their favor. *Manzarek*, 519 F.3d at 1031. However, it need not construe conclusory statements or unreasonable inferences as true. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

As an initial matter, Plaintiffs concede that their FAL, breach of implied warranty, unjust enrichment, and negligent misrepresentation claims should be dismissed. Dkt. No. 100 at 9. Plaintiffs also do not respond to Defendants' argument that they lack standing to seek injunctive relief. *See* Dkt. No. 94 at 31-32. When drafting the operative complaint, Plaintiffs had the benefit of two prior motions to dismiss identifying these deficiencies. Moreover, they do not seek leave to amend. Thus, these claims and their request for injunctive relief are **DISMISSED WITH PREJUDICE**.

Plaintiffs' UCL, CLRA, and fraud by omission claims remain. These claims are considered together, as Defendants' arguments for dismissal apply to each claim. But those arguments are unavailing.

First, Defendants argue that Plaintiffs impermissibly engaged in group pleading. Ordinarily, Rules 8 and 9(b) do not allow complaints "to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026). But plausible allegations of alter-ego liability generally obviate this requirement. *United States ex rel. Ginger v. Ensign Grp., Inc.*, No. 15-CV-00389-JWH, 2022 WL 4110166, at *3 (C.D. Cal. Mar. 10, 2022) (first citing *United States v. TEVA Pharms. USA, Inc.*, No. 13-CV-3702-CM, 2016 WL 750720, at *12 (S.D.N.Y. Feb. 22, 2016); and then citing *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 453 (E.D. Pa. 2020)). That is because such allegations "imply that the . . . Defendants here are—for all intents and purposes—the same Defendant." *Id.* Plaintiffs plausibly allege alter-ego liability, so their group pleading is permissible.

Second, Defendants argue that Plaintiffs do not plausibly allege a duty to disclose kratom's addictive qualities because it is implausible that Defendants knew or should have known and had

United States District Court
Northern District of California

superior knowledge about those qualities. However, Plaintiffs allege that Defendants represent themselves as experts in kratom's pharmacology, and it is known that "repeated use of kratom . . . results in opioid withdrawal symptoms." SAC ¶¶ 40-46, 131. Moreover, the OPMS brand name seems to be a nod to opium. *Id.* ¶ 126. In 2014, the FDA issued an import alert stating that kratom "can lead to . . . severe withdrawal signs and symptoms." *Id.* at 72; Dkt. No. 101 at 5. And Defendants have allegedly been told about kratom's addictive qualities by growers, distributors, and users. SAC ¶¶ 132-33. Defendants point to statements from health officials declining to classify kratom as controlled and noting limited scientific evidence about its effects. *See* Dkt. No. 95-1 at 2, 5, 7, 9-10, 15, 18. Nevertheless, those statements acknowledge concern about kratom's addictive potential. *See id.* at 14 ("In humans, opioid-like withdrawal symptoms have been reported after cessation of kratom use."); *id.* at 10 ("I also support enhanced public awareness that *kratom* contains molecules that may potentially be dangerous."); Dkt. No. 101 at 47 ("Some experts are concerned about kratom's addictive potential . . . ."). It is therefore plausible that even though scientists had conducted insufficient research to be certain that kratom is highly addictive, Defendants knew or should have known that was the case. *See L.S. v. Happy Hippo LLC*, No. 2:24-CV-02849-DAD, 2025 WL 1993383, at *8 (E.D. Cal. July 17, 2025) (citing *J.J. v. Ashlynn Mktg. Grp., Inc.*, 749 F. Supp. 3d 1086, 1099 (S.D. Cal. 2024)). And it is plausible that because of their expertise, Defendants had better knowledge than Plaintiffs of kratom's addictiveness. *See J.J.*, 749 F. Supp. 3d at 1100.

Third, Defendants argue that reliance is insufficiently pled. Plaintiffs allege that they learned about kratom through friends and relatives who did not believe it presented a risk of addiction. SAC ¶¶ 160, 163. Had they known it was addictive, Plaintiffs say they would not have bought Defendants' products. *Id.* ¶¶ 162, 165. That is sufficient to allege reliance on omissions, as it is plausible that "pre-purchase disclosure would have altered their purchases." *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1018 (N.D. Cal. 2020) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). Defendants contend that the representations of Plaintiffs' friends and family, not any omission, were the immediate cause of their purchasing decisions. Even assuming that is a fair reading of Plaintiffs' allegations, the cases Defendants cite hold "[i]t

9

is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct." *See OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 864 (2007). Plaintiffs have therefore sufficiently alleged reliance.

Finally, Defendants argue that M.C.'s claims are not timely. That argument is premised on prior versions of the complaint, which alleged both that M.C. discovered her addiction "[a]bout six months after she began using Defendants' Products" in October 2018 (so April 2019), and that she "realized she was truly addicted to kratom in October 2021." Dkt. No. 42 ¶¶ 143-44. The operative complaint drops the former allegation. SAC ¶ 164. Plaintiffs' counsel represents that the contradictory allegations were "written in error" and M.C. discovered her addiction in October 2021. Dkt. No. 100 at 30. As one of M.C.'s original allegations about when she discovered her addiction must be incorrect, and Defendants do not show the current allegations were made in bad faith, the operative complaint controls. *See Kanaan v. Yaqub*, No. 21-CV-09591-BLF, 2022 WL 3357834, at *4 (N.D. Cal. Aug. 15, 2022) (accepting inconsistent amendment of complaint to correct typo). Thus, M.C.'s claims are timely.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss for lack of personal jurisdiction is **DENIED**. Plaintiffs' FAL, breach of implied warranty, unjust enrichment, and negligent misrepresentation claims, as well as their request for injunctive relief, are **DISMISSED WITH PREJUDICE**. Their UCL, CLRA, and fraud by omission claims survive dismissal. The Court **SETS** an initial case management conference for **June 4, 2026**. The parties **SHALL** file an initial case management statement no later than noon on **May 28, 2026**.

**IT IS SO ORDERED.**

Dated: May 1, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge

10